Ed McVICKERS, Dr. J. B. Miles, Bert Temple, Frank Elkouri, W. A. Cowans, Vaughndean Landes, Wallace Kidd and Ronald Bassett, Plaintiffs,

v.

Waldo J. ZERGER, Mayor, Melvin R. Allen, Vice-Mayor, Carl Miller, Councilman, J. L. Welch, Councilman, Wilford D. Lager, Councilman, Richard Bell, Councilman and Victor Scott, Councilman of the City of Anadarko, Defendants.

No. 40782.

Supreme Court of Oklahoma.

Feb. 25, 1964.

Haskell B. Pugh, Anadarko, for plaintiffs.

George J. Fagin, Gary P. Sibeck, Oklahoma City, for defendants.

Sterling N. Grubbs, Cushing, for City of Cushing, Okl., amicus curiae.

Clee Fitzgerald, Stillwater, for City of Stillwater, Oklahoma and Stillwater Industrial Foundation, amicus curiae.

Owen Vaughn, Chickasha, for City of Chickasha, Okl., amicus curiae.

HALLEY, Vice Chief Justice.

This is an original proceeding in this Court by Ed McVickers, Dr. J. B. Miles, Bert Temple, Frank Elkouri, W. A. Cowans, Vaughndean Landes, Wallace Kidd and Ronald Bassett, as plaintiffs, against Waldo J. Zerger, Mayor, Melvin R. Allen, Vice-Mayor, Carl Miller, J. L. Welch, Wilford D. Lager, Richard Bell and Victor Scott, councilmen of the City of Anadarko, asking this Court to assume jurisdiction. The plaintiffs are resident taxpayers of the City of Anadarko and are appearing for themselves and others similarly situated. They charge that the defendants as Mayor, Vice-Mayor and Councilmen of the City of Anadarko are planning to call an election under Section 35, Article X of the Constitution of the State of Oklahoma for the purpose of raising funds by issuing and selling bonds which would be used for securing and developing industry within or near the City of Anadarko and that if the defendants are not enjoined they will do so. They say that Section 35, Article X only applies to incorporated towns and does not apply to incorporated cities and that the bonds, if voted, might exceed the 5% debt limitation of Section 26, Article X of the Oklahoma Constitution. It is further charged that the defendants will mortgage the industrial properties so acquired in order to obtain other funds that might be available from Federal or State funds. The plaintiffs ask that the defendants be enjoined from proceeding further in the calling of an election, and the issuance, delivery and marketing any bonds pursuant to Section 35, Article X of the Oklahoma Constitution.

■ Due to the importance and urgency of the matters herein involved to the City of Anadarko and other cities of Oklahoma we will accept original jurisdiction. See Meder v. City of Oklahoma City, Okl., 350 P.2d 916.

The following stipulation of facts was entered into by the parties:

"1. That the Mayor and Councilmen of the City of Anadarko intend and are preparing to call an election for the purpose of submitting to the qualified voters of said municipality the question of issuing limited tax general obligation bonds pursuant to the provisions of Article X, Section 35 of the Oklahoma Constitution for the purpose of securing and developing industry within the said municipality.

"2. That one of the principal purposes of Article X, Section 35 is the securing and development of industry which will provide additional employment and strengthen the economy of the municipality issuing said limited tax general obligation bonds, and the State of Oklahoma.

"3. That the Cities of Cushing and Stillwater are similarly situated as the City of Anadarko with regard to the issuance of limited tax general obligation bonds to secure and develop industry; and that the said cities cannot proceed pursuant to the provisions of the Local Industrial Development law or Public Trust Act, which provides for the establishment of an Authority with the outstanding obligations to be retired from the revenue derived

from the rental and other commitments made by the industry. Small and medium-sized industries have difficulty in having revenue bonds sold and issued by means of a municipally or publicly controlled vehicle such as a trust or authority. There have been only two cases in Oklahoma where revenue bonds have been issued and sold to finance the acquisition of industrial activities and both companies are national in size and their stock traded on the New York Stock Exchange.

"4. That attached hereto is a chart published by the Oklahoma Department of Commerce and Industry which depicts the economic effect of a new factory employing 100 workers in a community. Such graphic presentation most clearly portrays the expected results to be obtained from similar industries in terms of eventual employment to be located in the Cities of Anadarko, Cushing and Stillwater.

"5. That the governing boards of the three said municipalities intend to proceed with the election and issuance and sale of limited tax general obligation bonds for the purpose of securing and developing industry to be used for manufacturing; and that the location of said industrial concerns and facilities within or near the three municipalities will create many additional jobs and employment within the State; that the governing boards are presently negotiating with various other industrial concerns interested in locating plants in Oklahoma which, if so located, will result in additional employment, payrolls and stimulation of the economy within and without the corporate limits of the three municipalities; and that many employees of such industrial concerns will reside in other cities and commute to their jobs thereby directly benefiting other cities and communities over the State in addition to the three municipalities in-

volved. The foregoing is also the position of the Oklahoma Municipal League representing 250 Oklahoma municipalities.

"Dated this 22 day of January, 1964."

The plaintiffs raise four propositions which we will answer in this case. They are:

"1. Is Section 35, Article X, of the State Constitution, self-executing?

"2. Does Section 35, Article X, of the State Constitution, apply to cities of first class?

"3. Does the 5% debt limitation of Section 26, Article X, of the State Constitution, apply to industrial development bonds issued by cities under Section 35, Article X, of the State Constitution?

"4. Can the city's title in industrial building acquired under provisions of Section 35, Article X, of the State Constitution, be mortgaged in the event necessary to supplement federal or state funds or funds from other sources?"

We will discuss them in the above order.

■ Proposition One raises the question of whether Section 35, Article X of our State Constitution is self-executing. In our opinion this Section is sufficient in itself. A reading of the same shows clearly that it needs no act of the Legislature in order to know how to proceed under it. We have spoken clearly on a similar question in City of Shawnee v. Williamson, Okl., 338 P.2d 355.

The plaintiffs' second proposition raises an interesting question. It challenges Section 35, Article X as not applying to incorporated cities as the words "incorporated city" are omitted. The first paragraph of the Section is as follows:

"(a) Any incorporated town and any county may issue, by and with the consent of the majority of the qualified taxpaying voters of said municipality or county voting on the question at an election held for the purpose, bonds in

sums provided by such majority at such election for the purpose of securing and developing industry within or near the said municipality holding the election, or within the county holding the election."

However, in the preamble of the Senate Joint Resolution No. 12 this language is used:

"A JOINT RESOLUTION proposing an amendment to Article X, Oklahoma Constitution, same to be added as § 35; relating to municipal and county levy for the purpose of securing and developing industry and authorizing any incorporated city, any incorporated town or any county, by and with the consent of the majority of qualified taxpaying voters, to issue bonds for

the purpose of securing and developing industry, within or near the municipality or within the county; providing for submission of the proposed amendment to the people for their approval or rejection; and ordering a special election." Laws 1961, p. 713.

It is also to be noted that in paragraph (c) this language is used:

" * * * and provided further, however, that in no event shall the real and personal taxable property in any city or town be subject to a special tax in excess of five (5) mills for bonds issued hereunder."

In the ballot title that submitted this amendment to the vote of the people the words "any incorporated city" were included. We set out that ballot title in full:

"BALLOT TITLE

Legislative Referendum No. ——— State Question No. ———

THE GIST OF THE PROPOSITION IS AS FOLLOWS:

Shall a constitutional amendment ——————————————————

to Article X, Constitution of Oklahoma, same to be added as § 35, relating to municipal and county levy for the purpose of securing and developing industry and authorizing any incorporated city, any incorporated town, or any county, by and with the consent of the majority of qualified taxpaying voters, to issue bonds for the purpose of securing and developing industry, within or near the municipality or within the county.

be approved by the people?

☐ YES

SHALL THE PROPOSED AMENDMENT BE APPROVED?

☐ NO"

———◆———

■ It is our conclusion that the Legislature intended and the people of Oklahoma understood and approved of Section 35, Article X of the Constitution as applying to incorporated cities. This was adopted at a special election May 1, 1962. As used in the Section 35, we say that the word "town" was used in its broad sense and included both cities and towns. This was the manifest purpose of both the Legis-

lature and the people of Oklahoma. See Mid-Continent Petroleum Corp. v. Mullen, 206 Okl. 636, 245 P.2d 1142.

■ The plaintiffs' third proposition raises the question of whether the 5% debt limitation of Section 26, Article X of the Oklahoma Constitution applies to Industrial Development Bonds issued by cities under Section 35, Article X of our Constitution.

The answer to that question is that it does not.

■ It is evident that the Legislature and the people of this State were aware of Section 26, Article X of our Constitution and well knew that the 5% restriction of Section 26 had been fully allotted. Their intention is clear that the five mills were to be devoted to the purposes provided for in Section 35 over and above the restrictions of Section 26, as the same specifically provides, " * * * in a total amount not to exceed five (5) mills on the dollar, in addition to the legal rate permitted * *." We have held that "[a] constitutional amendment should be construed in the light of its purpose and given a practical interpretation so that the plainly manifest purpose of those who adopted it may be carried out." Mid-Continent Petroleum Corp. v. Mullen, supra.

The plaintiffs' fourth proposition questions the right of a city to mortgage their title to these industrial properties in the event it is necessary to supplement federal or state funds or funds from other sources. Sub-paragraph (2) of paragraph (e) of Section 35, Article X is:

> "In the expenditure and use of proceeds from the sale of said bonds, the said governing body is hereby authorized and directed to coordinate its industrial development plans and projects insofar as practicable with similar plans and projects of local industrial development agencies and the Oklahoma Industrial Finance Authority, as set forth in § 34 of Article X of the Constitution, so as to supplement funds to be derived from these and other sources, including federal aid available to economically depressed areas, if any; and to the extent that federal requirements shall require subordination of liens securing loans from the Oklahoma Industrial Finance Authority or from other sources, as a condition to the obtaining of such federal aid, the same is hereby approved and authorized."

■ The foregoing provision gives the right to the cities and towns to mortgage such properties under the terms and conditions therein set forth. There is no conflict between this provision and Sections 16 and 17 of Article X of our Constitution. It was intended to be in harmony with Section 34 of Article X which deals with State Industrial Finance Authority.

In light of the provisions of our Constitution and its amendments we hold that the injunction prayed for in this proceeding should be denied.