**Glenn J. SHARPE, Appellant,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Appellee.**

**No. I.**

Court on the Judiciary of Oklahoma.

Appellate Division.

Oct. 4, 1968.

Rehearing Denied Nov. 1, 1968.

Charles Hill Johns, James F. Howell, Toney M. Webber, Midwest City, for appellant.

Howard K. Berry, Oklahoma City, David L. Field, Enid, for appellee.

McINERNEY, Justice.

This is an appeal from the judgment of the trial division of the Court on the Judiciary rendered August 6, 1968 removing Glenn J. Sharpe from the office of County Judge of Bryan County, Oklahoma. Sharpe was further disqualified to hold any public office of honor, trust, or profit in the State of Oklahoma for a period of three years. These proceedings are being conducted pursuant to Article 7–A, Constitution of Oklahoma, adopted May 3, 1966.

Sharpe made a timely demand for jury trial which was refused. The denial of a jury trial forms the principal basis for this appeal. Two other propositions will be disposed of before reaching the principal question.

Sharpe was elected County Judge of Bryan County, Oklahoma and assumed that office in January, 1965. He was elected to a second term as county judge beginning January, 1967. As noted above, Article 7–A of the Constitution was adopted May 3, 1966 and formed a part of the organic law of this state prior to Sharpe qualifying for his second term of office. On May 17, 1968, a petition was filed by the Oklahoma Bar Association alleging, inter alia, that during the period from January 11, 1965 to July 26, 1967, Sharpe improperly received

fees for the issuance of waiver orders which authorized the issuance of marriage licenses. This period of time covers both his first term and a part of his second term as county judge.

The record in this case reflects that Sharpe received and retained a sum in excess of $13,000.00 for issuing waiver orders dispensing with the blood test documents required by 43 O.S.1961 §§ 31 and 32, the three day waiting period required by 43 O.S.Supp.1965 § 5, and the age requirements of 43 O.S.Supp.1965 § 3. Sharpe contended that he was accepting gratuities for extra services rather than charging fees. The trial division rejected this contention and found that Sharpe collected and received monies for waiver orders not authorized by law and that this activity constituted corruption in office. The trial division then entered the order and judgment set out above.

Sharpe urges that the trial division should have dismissed the petition on timely motion prior to trial for the reason that the petition was improperly filed. This contention is based on the Executive Director of the Oklahoma Bar Association signing the petition rather that the Executive Secretary of the Oklahoma Bar Association, the title of the person designated in Section 4, of Article 7–A, Okl.Const.

█ █ After the passage of the amendment creating the Court on the Judiciary, the Supreme Court of Oklahoma adopted new rules creating and controlling the Oklahoma Bar Association. 5 O.S.Supp.1967 Chap. 1, App. 1, Art. 1 et seq. These rules become effective September 24, 1966. The governing body of the Association, formerly the Executive Council, was designated as the Board of Governors and the Executive Secretary was designated as the Executive Director. The possibility of a change in the name or nomenclature of the governing body of the Association is recognized in the constitutional amendment by the references to "Oklahoma Bar Association, chosen by its Executive Council, *or other body exercising similar powers"* in Art. 7–A § 2(b) and (c). The Board of Governors is the successor to the Executive Council. The Executive Director is the successor to the Executive Secretary, and exercises similar duties. The evident intent of the constitutional amendment was to permit the governing body and its executive officer to institute proceedings. A constitutional amendment should be construed in the light of its purpose and given a practical interpretation so that the plainly manifest purpose of those who adopted it may be carried out. McVickers et al. v. Zerger et al., Okl., 389 P.2d 977. The strict construction sought by Sharpe is contrary to the plainly manifest purpose of the people as expressed by their adoption of Article 7–A, Okl.Const. This proposition is without merit.

Sharpe objects to the admission into evidence of acts of malfeasance and misfeasance occurring prior to January, 1967 and during his first term of office. This objection is predicated upon his theory that this evidence would tend to prove a criminal offense rather than support a judgment removing him from office. We are unable to follow this reasoning.

█ Sharpe cites 22 O.S.1961, § 1181 and cases construing § 1181 to support this contention. In 1955, the legislature enacted 22 O.S.1961, § 1181.1 which specifically included acts committed during a previous term as grounds for removal. The assertion that § 1181.1, supra, has no bearing on the jurisdiction or scope of inquiry of this court is untenable. Acts or omissions committed during a previous or preceding term may be considered by the Court on the Judiciary. A trial conducted by the Court on the Judiciary is a special proceeding for the removal or compulsory retirement of judges. There is no reason or logic to hold the admission of evidence more restrictive in this court than permitted by 22 O.S.1961, § 1181.1.

We also observe that the evidence included receipt and retention of monies by Sharpe subsequent to January, 1967, the term of office held at the time of the trial. The sufficiency of the evidence is not seriously challenged. The evidence is amply sufficient to support the judgment rendered.

The principal contention of error is that Sharpe was denied a jury trial. In separate propositions, Sharpe asserts, first, that his right to a trial by jury is guaranteed by Article 2, §§ 6, 19 and 20 of the Constitution of Oklahoma and by Article 3, § 2, together with the 6th and 14th Amendments of the Constitution of the United States, and secondly, the judgment rendered is infamous punishment which can only be rendered by a jury for the conviction of an infamous crime. These propositions are so interwoven that they will be considered together.

Article 2, § 20, Okl.Const., provides, "(I)n all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: * *". The application of this section, and §§ 6 and 19, to the present case is to be determined by the nature of the proceedings in the trial division of the Court on the Judiciary.

An examination of Article 7–A demonstrates unequivocally that proceedings thereunder are not criminal prosecutions. The jurisdiction of the court is limited to the removal with or without disqualification or the compulsory retirement of judges. Article 7–A, §§ 1 and 4(d). The court is charged with the duty of making rules of procedure, § 3, or following the rules of civil procedure or common law, § 4(c). Jeopardy, civil or criminal, does not attach to the acts invoking the court's jurisdiction, § 4(d), as commanded by Article 2, § 21 of the Constitution relating to criminal prosecutions. The review in the appellate division is an equity review and the judgment may be affirmed, modified, reversed or a new judgment entered, § 5(c). The court is not empowered to imprison or fine a person brought before it. Both the structure and the intent of Article 7–A, Okl.Const., compel the conclusion that the proceedings contemplated are not criminal prosecutions. Article 2, § 20, Okl.Const., applies only to criminal prosecutions.

Sharpe contends that 21 O.S.1961, § 3 defines a crime or public offense. Disqualification to hold and enjoy any office of honor, trust, or profit under this State is one of the punishments enumerated under this section. § 3(5).

This section provides that a "crime or public offense is an act or omission forbidden by law" and then enumerates the permissible punishments. Section 3, supra, does not create an offense or describe an act which is made criminal. The legislature must define offense by particular description of act or omission constituting it. A mere delineation of permissible punishments for a crime is insufficient to create a criminal offense. 21 O.S. 1961, § 2. We have found no criminal statute imposing disqualification as a specific punishment for an act or offense in the criminal code. Sharpe cites no such statute.

Article 2, § 6, Okl.Const., provides that the courts of this State shall be open to every person to afford a speedy and certain remedy. The Court on the Judiciary is a court of this State, Article 7, § 1, Okl.Const., and no specific complaint is made of either the speed or certainty of the judgment rendered.

Article 2, § 19, Okl.Const. provides that, "(T)he right of trial by jury shall be and remain inviolate, * * *". This section applies only to those cases in which a right to trial by jury inheres in the first instance. Section 19, supra, preserves the right where it existed at common law. Vogel v. Corporation Commission of Oklahoma, 190 Okl. 156, 121 P.2d 586. In Oklahoma there are no common-law crimes, and no act is a crime unless made so by statute. 21 O.S.1961 § 2; State v. Stegall, 96 Okl. Cr. 281, 253 P.2d 183; Griffin v. State, Okl.Cr.App., 357 P.2d 1040, 1046.

**306**

■ Sharpe's reliance on earlier provisions of the Oklahoma Constitution and statutes in conflict with Article 7–A must be rejected under settled state law. Article 7–A, adopted by the people in May, 1966, makes no provision for a jury trial. The intent of the new article is plain, clear, and unambiguous. The evident meaning must be accepted without resort to interpretive devices to fabricate a different meaning. State ex rel. Ogden v. Hunt et al., Okl., 286 P.2d 1088; Hines v. Winters et al., Okl., 320 P.2d 1114. This is the latest expression of public policy and forms a part of the organic law of this State. Later provisions of the Constitution or statutes on the same subject matter must prevail when in conflict with earlier provisions. 75 O.S.1961, § 22. No violation of a state constitutional right is present in the proceedings under review.

■ Does Article 7–A, Okl.Const., offend the rights of Sharpe under Article 3, § 2, and the Sixth, Seventh and Fourteenth Amendments of the Constitution of the United States? Since the Seventh Amendment to the U. S. Constitution never has been held to apply to the states, we need not consider the argument presented on this point. It is unsupported by any U. S. Supreme Court pronouncements.

The trial division's refusal to grant a jury trial is asserted by Sharpe as violative of his rights under the 6th Amendment to the U. S. Constitution. This claim to error is rested principally on Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). The cited cases hold that the 6th Amendment's right to a jury trial "in serious criminal cases" is applicable to the states through the 14th Amendment; but neither Bloom nor Duncan settles "the exact location of the line between petty offenses and serious crimes."

■ A criminal action is defined by 12 O.S.1961, § 7 as "one prosecuted by the State as a party, against a person charged with a public offense, for the punishment thereof." Proceedings before the Court on the Judiciary do not fall into this definition. Art. 7–A, § 4(d). Their sole object is to declare one who exercises judicial power to be unfit, on grounds quite distinct from criminal acts or omissions, to hold a judgeship. Art. 7–A, § 1(b) and (c) and 4(d), Okl.Const. A state is free to excluded from public employment those persons whose unfitness and unsuitability bears a rational relationship to the qualifications for a particular position, although the exclusion may incidentally limit the excluded person's opportunity for reemployment, so long as the adjudication of unfitness rests on constitutionally permissible standards and emerges from a proceeding which conforms to the minimum standards of due process. The interest of the state in the integrity of those in its service has been held to merit federal recognition in a multitude of cases decided in the last two decades. Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); Adler v. Board of Education, etc., 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472 (1952); Beilan v. Board of Public Education, etc., 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958); Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); and Pickering v. Board of Education, etc., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

Sharpe was declared unfit for, and removed from, a judicial office as a result of an adversary proceeding which met all the basic requirements of federal and state due process. The trial division's judgment declaring him ineligible to hold public office is to be regarded not as punishment for past misconduct but rather as a mere legal consequence attached to the adjudged unfitness. Reduced to simplicity, the so-called disqualification is but an exclusion from state service on grounds which bear a rational relationship to Sharpe's lack of suitability for the retention of his judgeship.

■ The proceeding lacks the essential characteristics of a criminal prosecution to which the 6th Amendment's asserted guarantee is applicable. Even if the nature of the proceeding is to be measured by the seriousness of the sanction imposed rather than by the object of the proceeding, there is here no merit in the contention that imposition of a disqualification to hold public office affords a basis for characterizing the entire process as falling within the classification of "criminal prosecutions" in the sense in which that term is used in the 6th Amendment. This is so because no sanction properly can be imposed by the Court on the Judiciary beyond that which is directly relevant to a declaration of judicial unfitness. In short, the essence of the sanction is not "punishment" but present and future exclusion from office based on grounds bearing rational relationship to the interest of the state in the fitness of its judicial personnel.

■ It is true that in the present cause disqualification was extended to "any public office of honor, trust, or profit" within this State. Although this sanction is expressly authorized by Article 7–A, § 4(d), Okl. Const., its generality might conceivably be subject to challenge as the deprivation of a basic civil right bordering on "serious punishment" within an expansion of present decisional law. That issue need not be reached here inasmuch as, in our opinion, the interest of the State of Oklahoma in excluding Sharpe from judicial office will be adequately and amply served by modifying the trial division's judgment so as to limit its disqualification clause to any judicial office. The judgment of the trial division is accordingly modified to provide that Sharpe shall be disqualified to hold any judicial office within this State for a period of three years.

Judgment, as modified, affirmed.

WILLIAMS, P. J., and NIX, FERRIS, HOWELL, MARMADUKE, McBEE, MIRACLE and VAN METER, JJ., concur.