S. Rush NICHOLSON, Appellant,

v.

JUDICIAL RETIREMENT AND RE-MOVAL COMMISSION, Appellee.

Supreme Court of Kentucky.

Jan. 31, 1978.

Frank E. Haddad, Jr., Louisville, for appellant.

Paul W. Willis, Executive Secretary of the Judicial Retirement and Removal Com'n, Larry S. Roberts, Amos S. Eblen, Chairman, Judicial Retirement and Removal Com'n, Lexington, for appellee.

PER CURIAM.

This is an appeal from a final order of the Judicial Retirement and Removal Commission which found that Nicholson, a judge of the Jefferson Circuit Court, so ineptly handled a RCr 11.42 proceeding as to bring the judicial office into disrepute. The Commission issued a public censure. RAP 4.020(b), now SCR 4.020(b). He appeals and attacks the order on three fronts.

I.

Nicholson contends that the "ex post facto" prohibitions of the state and federal constitutions prohibit the Commission from acting in this case because the conduct in question occurred after the effective date of Section 121 of the Kentucky Constitution but before that section was implemented by the promulgation of RAP 4.000, et seq. by the Supreme Court. His position is that the constitutional authorization for discipline of judges "for good cause" is so vague as to be ineffective without implementation by the publication of rules establishing more particular conduct guidelines. He asserts that this vague standard provides no advance warning of that conduct which would fall within its perimeter. Hence he claims that this proceeding deprives him of due process of law.

■■■ It is clear that the "ex post facto" prohibition applies only to criminal matters. *Beazell v. Ohio,* 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898); *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). A proceeding before the Commission is not a criminal matter. See *Napolitano v. Ward,* 457 F.2d 279 (7th Cir. 1972), cert. den. 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486, reh. den. 410 U.S. 947, 93 S.Ct. 1351, 35 L.Ed.2d 616; *In re Haggerty,* 257 La. 1, 241 So.2d

469 (1970); *Sharpe v. State,* 448 P.2d 301 (Okl.Jud.1968), cert. den. 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 216.

■■■ The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice. The aim of proceedings instituted pursuant to this section is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation. The target is not punishment of the judge. Consequently, the action of the Commission does not constitute a violation of the "ex post facto" prohibitions of the federal and state constitutions. See *Flemming v. Nestor,* 363 U.S. 603, 614, 80 S.Ct. 1367, 4 L.Ed.2d 1435, 1446 (1960); *DeVeau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109, 1120 (1960). Cf. *Ex parte Garland,* 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366 (1866); *Cummings v. Missouri,* 4 Wall. 277, 71 U.S. 277, 18 L.Ed. 356 (1866).

■■■ Nicholson can not claim a lack of notice that his conduct would be subject to review by the Commission. The authority to remove members of the judiciary for good cause is not ambiguous to the members of the legal profession. Such phrases as "for cause" or "for good cause" are terms of art which possess a special meaning manifest to the profession when used in this context. These terms denote a legal cause which affects the ability and fitness of a judge to perform the duties of the office. *Napolitano v. Ward,* 317 F.Supp. 79 (D.C.Ill.1970); *Sarisohn v. Appellate Div., Second Dept., Supreme Court,* 265 F.Supp. 455 (D.C.N.Y.1967).

■■■ Such a standard is not so vague as to violate due process requirements. Although the specific acts of misconduct encompassed within the phrase are numerous, ample guidelines for the determination of proper conduct may be found in the ethical standards applicable to lawyers and judges

adopted by national and state bar associations and in the moral standards expected of judicial officers by the public. *Sarisohn v. Appellate Div.*, supra. Such a standard is no more vague than that of "good behavior" used with respect to federal judges contained in Section 1 of Article 3 of the United States Constitution. *Friedman v. State*, 24 N.Y.2d 528, 301 N.Y.S.2d 484, 249 N.E.2d 369 (1969).

## II.

■ The Commission investigated the allegations of misconduct, instituted formal proceedings and issued a public censure after conducting an evidentiary hearing. Nicholson contends that the mere combination of the investigative and adjudicative functions within the Commission violates his due process right to an unbiased trier of fact. He argues that involvement in the investigation of this incident so influenced the members of the Commission that they could in no way remain impartial at the adjudicative stage of the proceedings.

A similar position has been taken by others in similar situations in the past and has been rejected. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *FTC v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *NLRB v. Donnelly Garment Co.*, 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947). This issue was recently raised in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). This case dealt with the combination of investigative and adjudicative functions within an examining board vested with the authority to discipline physicians pursuant to a Wisconsin statute. The court rejected the argument that Nicholson raises here, 421 U.S. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 723, 724:

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."

This case does not present a situation where common sense dictates that the investigative and adjudicative roles must be played by different persons in order to avoid inevitable bias. E. g., *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Nicholson has not overcome the presumption of honesty and integrity of the members of the Commission, most of whom are members of the bench or bar and cognizant of the proper standards applicable at each stage of the proceedings. "The case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process . . ." 2 Davis, Administrative Law Treatise, Sec. 13.02, p. 175 (1958). E. g., *In re Haggerty*, 257 La. 1, 241 So.2d 469 (1970).

## III.

■ Nicholson challenges the authority of the Commission to issue a public censure. Because Section 121 of the Kentucky Constitution expressly delineates only three courses of action, retirement for disability, suspension without pay and removal for cause, he contends that the Commission is precluded from imposing lesser sanctions. We interpret this section differently.

The language of Section 121 is so similar to the language contained in Article VI, Section 22(a) of the New York Constitution, before its amendment in 1975, that we conclude that the drafters of Section 121 used Section 22(a) as a model. Section 22(a) of the New York Constitution, effective from

**310**

1948 to 1975, created a Court on the Judiciary and expressly provided that a judge could be removed for cause or retired for mental or physical disability. Pursuant to this provision the Court on the Judiciary issued a severe public reprimand to two judges without removing or retiring them. *In re Sobel and Leibowitz,* 8 N.Y.2d(a) (Ct. on the Jud.1960).

Our own reason and experience leads us to the same result reached by the New York court. If the Commission can remove a judge from office, it can certainly impose lesser sanctions in order to achieve the ultimate goal of judicial purification. We hold that the express grant of authority to retire, suspend or remove judges for good cause contained in Section 121 of the Kentucky Constitution includes by implication the authority to impose the lesser sanctions set forth in RAP 4.020(b).

### IV.

On September 27, 1977, the date on which the Commission decided this case, and for a considerable period prior thereto, amendment of RAP 4.020, now SCR 4.020, was under consideration by this court. On October 14, 1977, this court amended the rule effective January 1, 1978. One of the most significant changes was to add subsection (d) which provides: "An erroneous decision made in good faith shall not be subject to the jurisdiction of the Commission."

The purpose of this addition was to make explicit that which we recognized to be implicit in our constitution and the rule. In a state which has an elected judiciary incompetence which is not gross and persistent can be safely left to elimination at the ballot box. Error can be adequately corrected by the appellate courts. Any other approach to the problem would destroy judicial independence by causing judges to keep one eye on their reversal rate and the other on the Commission. Both judicial eyes should be trained on the just disposition of the case at hand and not on the welfare of the sitting judge.

The final order of the Judicial Retirement Commission is vacated and the cause is remanded to the Commission for reconsideration in the light of section IV of this opinion.

All concur.