Karen "Kay" M. DOYLE, Appellant,

v.

JUDICIAL RETIREMENT AND
REMOVAL COMMISSION,
Appellee.

No. 93–SC–791–RR.

Supreme Court of Kentucky.

Sept. 1, 1994.

Rehearing Denied Nov. 23, 1994.

B.L. Kessinger, Jr., Cheryl U. Lewis, Stites and Harbison, Lexington, for appellant.

George F. Rabe, James D. Lawson, Lexington, for appellee.

WINTERSHEIMER, Justice.

The Judicial Retirement and Removal Commission heard nine charges against District Judge Karen (Kay) Doyle of the Thirty-sixth Judicial District consisting of Magoffin and Knott counties. In 1993, it found her guilty of five counts. The commission ordered suspension of Judge Doyle without pay for two months based on the findings of guilt. Judge Doyle continued as District Judge until the end of 1993 when she lost that election. She is no longer employed by the court system and has reportedly left the state. Suspension would have no practical effect.

As the commission stated, the testimony before it established a bitter personal conflict between Judge Doyle and Magoffin Circuit Court Clerk Tommy Jayne. It was apparent to the Commission that the conflict began in January 1991, when Judge Doyle announced that she was going to seek election to the post of circuit judge against the incumbent circuit judge, John Robert Morgan. As the Commission noted, Clerk Jayne, an avid political supporter of Judge Morgan, began to

harass Judge Doyle in a variety of ways which are detailed in the briefs and record of this case. Among the actions taken by Jayne was a letter to the Retirement and Removal Commission. Later, her election opponent, Judge Morgan, filed charges before the same commission and a third notice of charges was filed in the winter of 1993. Some of the allegations were as early as 1989. The result was a very tough and bitter campaign for circuit judge.

Counts I, II and III indicate that Judge Doyle made misrepresentations of fact in her advertising while a candidate for circuit judge. The Commission determined these misrepresentations were violations of SCR 4.300 in that she failed to observe high standards of conduct so that the integrity and independence of the judiciary may be preserved; that she failed to conduct herself in a manner that promotes public confidence in the integrity and impartiality of the judiciary; and that she misrepresented facts as a candidate for judicial office.

The remaining two charges of which she has been found guilty involve numerous cases where upon conviction of persons, Judge Doyle failed to assess mandatory court costs and service fees. In addition to the violations listed under Counts I through III, the Commission determined that she was guilty under the other two charges because she failed to be faithful to the law; failed to maintain professional competence and failed to diligently discharge her administrative responsibilities.

■ Count I concerns a newspaper advertisement which stated that an opposing candidate "milked the taxpayers for approximately this amount during his political career." Although in poor taste, the term "milked" does not necessarily mean that one gains funds illegally, dishonestly or through immoral conduct. Certainly we do not intend to condone such a comment. However, it does not necessarily suggest that the person will cross over the line into the realm of improper conduct. "Milked" is defined in Webster's II New Riverside University Dictionary as: "To use for one's own gain." The Commission determined that the use of the term "milked" conveyed the impression that

Morgan "profited illicitly or to an unreasonable degree". The Commission is in error because it misapplied *Wilson v. Judicial Retirement & Removal Commission*, Ky., 673 S.W.2d 426 (1984). The plain meaning of the word "milked" does not convey those sentiments. The Commission's finding of guilt was not based on sufficient evidence to meet the high standard of clear and convincing proof.

■ Counts II and III relate to a different newspaper advertisement which was also reprinted as a handbill. The Commission concluded that the ad ran "with the intention to convey the negative impression that" another candidate supported a particular political position. That other candidate testified that he did not favor that position and Judge Doyle presented no evidence to the contrary. Her only defense was that she was presenting a pertinent question. The Commission disagreed and found "that the ad was a deliberate misrepresentation of fact and was made with the intention to obtain an unwarranted advantage over her opponent."

The advertisement featured a picture which appeared in a local newspaper. It shows the other candidate among a crowd of people. A second copy of the picture was printed after it had been modified. The modifications involved cutting out or cropping portions of the picture so that the other candidate remained pictured with supporters of a particular political position. Text associated with the pictures raises questions regarding other candidates' stand on the particular political issue.

The advertisement was in very poor taste and we do not mean to approve of such advertising, but it does not reach the level of "a deliberate misrepresentation of fact." The modified photo was headlined with the words "Trojan Horse." There is no attempt to pass the photo off as a statement of fact. The Commission finding that this was a "deliberate misrepresentation of fact" was not based on clear and convincing evidence.

■ Count III relates to the text of the same October 1991 advertisement and asks "why after recently inheriting or acquiring by survivorship almost $500,000.00 and State

Retirement after 25 years in State Government you want the job as Circuit Judge." The Commission focused on the word "recently" and the amount of $500,000 when it concluded "that the statement in the advertisement was without basis and was a misrepresentation of fact." There is no question that the word "recent" as used within the ad was "without basis and was a misrepresentation of fact" as found by the Commission to violate Supreme Court Rule 4.300, Canon 7(B)(1)(c).

■ The remaining two counts involve Judge Doyle's actions on the bench. Counts VI and VIII showed that Judge Doyle "failed to assess fines and court costs as required by KRS 24A.175(4) and DUI service fees as required by KRS 189A.050." Judge Doyle's explanation of her failure to order the mandatory $150 service fee in DUI cases was because she thought the fee was being collected by the Circuit Clerk's office. The evidence before the Commission was that there was a severe communications problem between the offices of the District Court and the Circuit Court Clerk. She admitted the charge to the Commission but there is nothing to indicate an intent to disobey the law. She also admitted that she did not always assess mandatory court costs.

The brief of the Commission discusses what it terms the "home incarceration dispositions by Judge Doyle which are involved in Counts VI and VIII." Although the Commission determined that Judge Doyle was guilty of Counts VI and VIII and this Court has upheld those findings of guilt, the issue of home incarceration was presented by the Commission in Count VII. Listed under its findings for Count VII, "the Commission, by majority vote, concludes that this charge has not been proven by clear and convincing evidence and it is therefore, dismissed." The home incarceration issue, although addressed in the Commission's brief is not an issue properly before this Court and will not be examined because the Commission's own order dismissed that charge.

In summary, this Court finds that the Commission was correct in finding Judge Doyle guilty of Counts III, VI and VIII. However, we believe the Commission was in error as to Counts I and II which failed to meet the clear and convincing standard of proof required for a finding of guilty. *Wilson v. Judicial Retirement & Removal Commission*, Ky., 673 S.W.2d 426 (1984); SCR 4.160.

In *Nicholson v. Judicial Retirement & Removal Commission*, Ky., 562 S.W.2d 306 (1978), this Court determined that the purpose of the Commission is to improve the quality of justice and "correct any deficiencies found by taking the least severe action necessary to remedy the situation." "Punishment of the judge" is not the purpose.

SCR 4.290(5) provides that this Court shall have power to affirm, modify or set aside in whole or in part the order of the Commission or to remand the action to the commission for further proceedings. *Hinton v. Judicial Retirement & Removal Comm.*, Ky., 854 S.W.2d 756 (1993).

■ Under no circumstances should the Judicial Retirement and Removal Commission be used as a campaign tool by candidates or their supporters. The behavior of the circuit clerk and the behavior of the incumbent judge is deplorable, but it does not excuse the misconduct of Judge Doyle. An examination of the exhibits in the file indicates that she was a very rough campaigner on her own behalf.

Nothing in this opinion should be considered as approval of the behavior of any party to the facts. The only reason for disagreement with the finding of the Commission is our review of the evidence related to the standard of proof in this case.

The order of the Retirement and Removal Commission is affirmed as to the guilt of Karen "Kay" Doyle on Counts III, VI and VII. Judge Doyle is no longer a judge and has left the state. Pursuant to SCR 4.290(5) and because of the impracticality of enforcement of the suspension, the original sanction of two months' suspension is modified to a public reprimand.

LAMBERT, REYNOLDS and SPAIN, JJ., and DAVID L. BOHANNON and RICHARD W. MARTIN III, Special Justices, concur.

LEIBSON, J., dissents by separate opinion.

STEPHENS, C.J., and STUMBO, J., did not sit.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

My Dissent in *Hinton v. Judicial Retirement & Removal Comm.,* Ky., 854 S.W.2d 756, 759 (1993), tries to call attention to the fact that the Judicial Retirement and Removal Commission is "constitutionally created as part of the new Judicial Article," and that "[i]ts fact-finding and decision-making is final subject to judicial review by the Supreme Court for reversible error using the same standard for review ['clearly erroneous'] that applies to review of the final decision of a trial court." It is not constitutionally created simply as an advisory board for this Court. Yet, we continue to treat it so.

Nor is the purpose of the judicial disciplinary process simply to "correct" the judge "by taking the least severe action necessary to remedy the situation," notwithstanding the quote to this effect in the Majority Opinion from *Nicholson v. Judicial Retirement and Removal Commission,* Ky., 562 S.W.2d 306 (1978). The Commission was constitutionally created by Section 121 of the new Judicial Article to *discipline* judicial misconduct with a just penalty serving to deter similar misconduct and to protect the public as well as to advise the judge (who should know better already) that her conduct is inappropriate. In addition, contrary to the Majority Opinion, "punishment of the judge" *is* a legitimate part of the purpose. Discipline is a matter of justice and public example as well as personal correction.

In this case the Commission has found Judge Doyle guilty on five different counts involving violation of the Code of Judicial Conduct. Under Counts I, II, and III, the Commission found that Judge Doyle, while a sitting District Judge, on three different occasions publicly disseminated misrepresentations of facts in her campaign ads for circuit judge in the 1991 election. The evidence supporting these findings more than met the clear and convincing standard that applies to such findings. Her advertisements were flagrantly misleading and maliciously demeaning.

In the two remaining Counts upon which she was found guilty her misconduct consisted of knowing and intentional failure to assess fines, court costs and service fees upon convictions of defendants of DUI and other offenses, as required by law. Again, the evidence supporting these findings was clear and convincing, and there is no reason to conclude they are clearly erroneous.

Given such findings, the Commission was clearly within its authority in fixing a penalty of two (2) months suspension from office without pay, and we are clearly exceeding our authority when we modify the Order of the Commission. Indeed, the Order of this Court modifying the final Order of the Retirement and Removal Commission does not purport to find the Commission's punishment erroneous. Nevertheless, it presumes to modify the penalty, reducing it to a public reprimand.

The only reason given for modifying the penalty is "impracticality of enforcement of the suspension." I know of no reason why "practical problems" related to carrying out a penalty, or indeed the impossibility of doing so, should lessen the penalty assessed by due process of law. Our decision should not suggest "public reprimand" as the standard of punishment for misconduct as represented by this record. To do so is to encourage rather than to deter judicial misconduct.

SCR 4.290 sets up a procedure for judicial review of the final orders of the Commission by the Supreme Court. In subsection (5) it purports to give this Court power to "modify" a final order of the Commission. However, if this implies we have power to modify sentences duly imposed by the Commission, our rule exceeds our constitutional power. We have no power to modify except in the usual powers of error correction that apply to appellate review of a final order. We have no power under the Judicial Article to proceed *de novo* to substitute our findings as to an appropriate punishment for the findings of the Commission. If the Commission's Order is erroneous, it should be reversed and the case either remanded or dismissed as

called for by the state of the evidence, but this Court has no power to weigh the evidence and substitute its judgment for that of the Commission.

In a series of decisions starting with the first *Nicholson* case (*Nicholson v. Judicial Retirement & Removal Comm., supra*), our Court has taken a wrong turn in viewing its power over the Commission. We have assumed powers of review much broader than constitutionally authorized. Section 121 of the Constitution says the Commission shall exercise the power to discipline (to order a judge "suspended without pay or removed for good cause") "subject to judicial review by the Supreme Court." Yet our decisions seemingly relegate the Commission's activities to an advisory capacity similar to that performed by the Kentucky Bar Association in lawyers' disciplinary matters. As stated by Justice Lukowsky in Dissent in the second *Nicholson* case, *Nicholson v. Judicial Retirement and Removal Commission,* Ky., 573 S.W.2d 642, 645 (1978):

> "Section 121 of the Constitution of Kentucky provides that judges may be disciplined by the Commission for good cause, that the Commission is a state body and that its actions are subject to judicial review by this court. It is unlike the Bar Association which has life, form and a disciplinary function in regard to lawyers only by grace of the rules of this court....
>
> This independent creation, life and charge make it perfectly clear to me that we must measure the Commission's actions with a totally different yardstick than we use in disciplinary cases involving lawyers.... We are not privileged to treat the findings of the Commission as advisory and find facts for ourselves."

The Kentucky Constitution envisions the Commission as an independent decision-making authority, and we should respect its constitutional role.