LAMBERT, J., DISSENTING:
Although I join Justice Wright's dissent regarding the necessity to file a writ to invoke our jurisdiction to hear this case, because the Majority has chosen to address the merits, I feel compelled to address them as well and respectfully dissent. I would hold that the Fifth Amendment protections afforded Judge Maze in her parallel criminal proceeding would stay the Judicial Conduct Commission (JCC) proceedings pending the outcome of her criminal charges, which are also part of the JCC complaint. Because of her fundamental constitutional rights against self-incrimination in her criminal trial, the procedures of the JCC must face a strict scrutiny test under Carey v. Wolnitzek.[39] and Republican Party of Minnesota v. White.[40] Because the public and the judiciary are fully protected by the temporary measures taken by the *217 JCC and the Chief Justice, there is no compelling state interest, thus the stay pending her criminal case should be granted.
I am persuaded by the analysis of Cornett v. Judicial Ret. and Removal Comm'n.[41] In Cornett, District Judge Cornett had been convicted in the United States District Court for the Eastern District of Kentucky of two felony offenses. Id. Judge Cornett timely filed an appeal to the United States Court of Appeals for the Sixth Circuit. Id. After Judge Cornett had been indicted and prior to his conviction, the Chief Justice signed an order appointing a special presiding judge in the place and stead of Judge Cornett.[42] Id. at 565. Meanwhile, the JCC commenced an investigation under SCR[43] 4.170 based on his indictment. Id. Proper notice of that investigation and an opportunity for Judge Cornett to be informally heard was given prior to his criminal trial. Id. Judge Cornett did not appear at the informal conference. Id. No further action was taken by the JCC until after he was convicted. Id. The JCC then scheduled another opportunity for Judge Cornett to appear informally with counsel, but the Judge did not appear. Id. On the scheduled date, the JCC entered an order suspending Judge Cornett based on his conviction in the United States District Court on two counts of conspiracy and bribery. Id. at 565-66. A formal hearing was scheduled thereafter. Id. at 566.
Judge Cornett attended that hearing in person without counsel and implored the JCC to defer a decision on the charges made against him until after the criminal proceedings in federal court had been fully and completely litigated. Id. The JCC refused to do so and issued an order removing him from office. Id. Judge Cornett appealed to the Kentucky Supreme Court. Id.
Citing Hazelrigg v. Douglass[44] -where three members of the Fiscal Court of Montgomery County, Kentucky were convicted of malfeasance in office and fined, then their offices forfeited and declared vacant-the Cornett court discussed the status of a public official who had been found guilty of a serious offense:
It is suggested that when a public official has been indicted and found guilty of a grave offense, and judgment has been pronounced depriving him of the office in the conduct of which he committed the malfeasance, he ought not thereafter to be allowed by suspending the judgment to discharge the duties of the office during an appeal; thereby defeating the course of the law that took from him the office he had disgraced. A sufficient answer to this is that, in the administration of justice, under our procedure, no judgment of an inferior tribunal can be deemed to finally adjudge the rights of the parties when the person against whom it is entered prosecutes within the time and in the manner allowed by law an appeal to a court having jurisdiction to revise it. Neither public policy nor the ends of justice would be promoted by denying to a public official the right to test the validity of a judgment against him; and it is difficult to understand upon what principle it can be maintained that such officer may appeal *218 from so much of the judgment as imposes a trifling fine, fully protecting his rights by the execution of a bond, and yet be denied the more important right to save his office until the judgment of the lower court can be reviewed.
We further said:
Again, it would be giving to the convicted officer very inadequate relief to say that he might appeal from the judgment vacating his office, and yet be deprived of the office by the judgment of the inferior court, although that judgment might be reversed and entirely set aside by the judgment of the appellate court....
Cornett , 625 S.W.2d at 567. This Court went on to reason:
In the instant proceeding, Judge Cornett has implored the Commission to await the final outcome of the criminal proceedings against him in the federal courts. Would granting Judge Cornett's request in any way interfere with the best interest of justice to be served? Judge Cornett has been suspended from the practice of law as an attorney. He cannot therefore practice law. On January 10, 1980, the Chief Justice of this court entered an order authorizing the regular judge of the Harlan Circuit Court assigned temporarily as special presiding judge of the District Court for the 26th Judicial District, with full and exclusive authority and responsibility to conduct all proceedings now and hereafter pending in that court. Judge Cornett was ordered to release to the said circuit judge all of the records and physical facilities of the district court. Consequently, for all intent and purposes Judge Cornett cannot sit as the District Judge for the 26th Judicial District. Not being able to practice law or to hold court, it can hardly be in the best interest of justice that Judge Cornett's request that the Commission withhold the entry of an order removing him from office be denied. Judge Cornett's appeal to the United States Court of Appeals is still pending. Consequently, there is no "conviction" which could at this time form the basis for the entry of an order removing him from office.
Id. at 568-69. Clearly, the JCC waited until after Judge Cornett was convicted in his criminal trial before it acted to permanently remove him from his seat. Judge Cornett's criminal trial took place in 1980 and he was temporarily removed with pay. But the JCC did not proceed with its hearing against Judge Cornett until 1981, again, after his criminal trial was over. Judge Maze should be entitled to the same treatment.
In the same vein, in Nicholson v. Judicial Ret. & Removal Comm'n, we noted that:
The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice. The aim of proceedings instituted pursuant to this section is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation. The target is not punishment of the judge. Consequently, the action of the Commission does not constitute a violation of the "ex post facto" prohibitions of the federal and state constitutions.[45]
*219 The majority seems to give much weight to the fact that Judge Maze has made "numerous voluntary and arguably incriminating statements" in both her self-reporting letters to the JCC and in a television interview. But there may be some conflation of the concepts of forgery of signatures versus completing an order with notation for clerical distribution, and Judge Maze has not admitted any bad faith in what transpired.
Her criminal charges, which overlap the JCC charges, are two counts of Second-Degree Forgery and one count of Tampering with Public Records. These charges are the result of her signing two orders for a drug test on her ex-husband for two different hospitals. Specifically, that on the first order she wrote "Bath Co. Attorney" on the "Attorney for the Plaintiff" (Form AOC-006-3, Rev. 6-88) line, which would have indicated that the Bath Co. attorney had seen the order and agreed to its contents. On the second order, (same vintage) she wrote "Commonwealth Att. & Bath Co. Attorney" on the "Attorney for the Plaintiff" signature line. We now know that neither the Commonwealth's attorney nor the Bath County attorney saw or agreed to the orders.
However, while Judge Maze fully admits to signing these documents and making the notations in the lower left segment of the single page form order, she explained in her answer to the JCC's counts that she inadvertently completed those orders in the same way she had completed other orders which were on the more recent adaptations of a different AOC form order she typically uses. Specifically, that she thought the form she signed (AOC-006-3) was the same as the AOC forms she had previously used (AOC-103-1) in that the portion to be signed was a "Distribution." The "Distribution" portion on the AOC-103-1 form simply tells the Circuit Clerk who the order should be mailed to, when entered. While the "Seen by and order of entry waived" portion of the AOC-006-3 form which she completed is meant to signify that whoever's signature is on that line has seen and agreed to the contents of the order. These sections are both in the bottom left-hand corner of the forms, and Judge Maze asserts that she "did not realize the wording on the bottom of the [AOC-006-3] order was different."
Second-Degree Forgery and Tampering with Public Records are intent crimes. A person is guilty of Second-Degree Forgery when "with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument[.]"[46] The Crime of Tampering with Public Records is committed when a person: (1) knowingly makes a false entry in or falsely alters any public record; or (2) knowing he or she lacks the authority to do so, intentionally destroys, mutilates, conceals, removes, or otherwise impairs the availability of any public records; or (3) knowing he or she lacks the authority to retain it, intentionally refuses to deliver up a public record in his or her possession upon proper request of a public servant lawfully entitled to receive such record for examination or other purposes.[47]
It is of course not within our province to determine the credibility of Judge Maze's explanation. That is the job of a fact-finder. But if the jury empaneled for her criminal trial credits her defense she *220 could potentially be acquitted of her criminal charges because she asserts she lacked the intent required to commit those crimes. Therefore, respectfully, the great weight that the Majority seems to place on her allegedly incriminating statements which might make the case indefensible is not well founded upon closer review.
I also respectfully disagree with the weight given to the public interest in "reducing the length of additional time Judge Maze receives her full judicial salary while incapable of performing her judicial duties." The interests of the public are fully protected during this time through her temporary suspension and with coverage of her duties by special judges. As the Nicholson[48] court noted, "The target is not the punishment of the Judge."
Should Judge Maze be found guilty of misconduct under the JCC proceedings, she is subject to discipline which could potentially remove her from the office to which she was elected. Her office would be declared vacant and a special election would be held to fill the remainder of her term which ends January 9, 2023.
The right to choose or pursue an occupation has been held to be a substantial right and is protected by the due process and equal protection clause of the Fourteenth Amendment and subject to a rational basis test. In Bruner v. Zawaki[49] , the Federal District Court said:
Under the due process clause of the Fourteenth Amendment, the state may not deprive a citizen of life, liberty, or property without due process of law. See U.S. Const. Amend. XIV § 1. "The touchstone of due process is protection of the individual against arbitrary action of the government." Cnty. of Sacramento v. Lewis , 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual liberty," including the liberty interest to pursue a chosen occupation. Craigmiles v. Giles, 110 F.Supp.2d 658, 661 (2000), citing Washington v. Glucksberg , 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ; Conn v. Gabbert , 526 U.S. 286, 291-92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Such a liberty interest is subject to reasonable regulation by the state, and the "burden is on the challenger to show that there is no rational connection between the enactment and a legitimate government interest." Am. Express Travel Related Servs. Co. v. Ky. , 641 F.3d 685, 689 (6th Cir. 2011) (internal alterations and quotation marks omitted).
Thus, the procedures of the JCC must at least meet the rational basis test. With the public fully protected, the JCC cannot constitutionally justify not awaiting the outcome of the criminal proceedings. Judge Maze has also asserted that there have been failures in the JCC process which include the refusal for informal conferences and the issuance of a subpoena for grand jury transcripts without the required notice under the applicable Supreme Court and criminal and civil rules.
Here, as in Cornett , both the JCC and the Chief Justice protected the public interest and the integrity of the judicial process by the temporary safeguards i.e., temporary suspension and the appointment of special judges to handle the judicial responsibilities. Therefore, there is no prejudice to the JCC or the public in staying the civil proceeding.
*221 In weighing the individual constitutional rights of Judge Maze against the JCC process, particularly with her temporary suspension and the appropriate actions of the Chief Justice in providing coverage of her assigned cases, I cannot agree that the JCC process should outweigh Judge Maze's Fifth Amendment and Fourteenth Amendment rights.
And while the majority cites Lehmann v. Gibson, 482 S.W.3d 375 (Ky. 2016) as if it supports its holding, through examination of its non-precise test,[50] this court in Lehmann actually upheld the lower court's deference to having the criminal prosecution case tried first. The Lehmann court emphasized the importance of the criminal process and its heightened importance in simultaneous civil and criminal proceedings:
The Commonwealth and public share a particularly weighty interest in protecting the integrity of the criminal prosecution. The degree to which the issues in the civil and criminal proceedings overlap, then, is particularly important. The more overlap, "the more likely that allowing civil discovery will jeopardize the integrity of the criminal proceeding" as using that discovery may become an "irresistible temptation" to gain an advantage in the criminal proceeding.
Id. at 384 (internal footnotes omitted).
Here, the JCC can show no prejudice to its case against Judge Maze by giving deference to the weightier criminal prosecution at hand. No citizens are at risk of harm as the safeguards of temporary removal and special judges are in place. Judge Maze has even been banned from the courthouses except to appear in her criminal cases. In fact, should Judge Maze be convicted, then the JCC case is greatly simplified. Yet Judge Maze's constitutional rights are on the line here, in both the JCC and criminal cases. Should she be improperly removed from office, there is no way to adequately restore her to her position to which she has been elected. Additionally, should the JCC remove her permanently prior to her criminal trial, that fact could be admitted against her in the criminal trial. At the very least, should she testify at the JCC hearing, those statements could be used against her in the criminal trial. Therefore, I cannot join the majority.
Keller and Wright, JJ., join.

614 F.3d 189 (6th Cir. 2010).

536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002).

625 S.W.2d 564 (Ky. 1982).

The Majority states that Judge Maze is "faced with this exact situation in Cornett . " However, that is not the case. Judge Cornett, who had also been suspended WITH pay pending his criminal case, had already been convicted of his charges, before the JCC attempted to permanently remove him from office.

Kentucky Supreme Court Rule.

126 Ky. 738, 104 S.W. 755 (1907).

562 S.W.2d 306, 308 (Ky. 1978) (emphasis added) (citing Flemming v. Nestor , 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) ; De Veau v. Braisted , 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) ; Ex parte Garland , 71 U.S. 333, 4 Wall. 333, 18 L.Ed. 366 (1866) ; and Cummings v. Missouri, 71 U.S. 277, 4 Wall. 277, 18 L.Ed. 356 (1866) ).

Kentucky Revised Statute (KRS) 616.030 (emphasis added).

KRS 519.060 (emphasis added).

Nicholson , 562 S.W.2d at 308.

997 F. Supp. 2d 691, 697-98 (E.D. Ky. 2014).

We find it unnecessary to provide an exhaustive list of factors for a trial court's consideration, but we find these to be strong guidance: (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [ (5) ] the interests of persons that are not parties to the litigation; [ (6) ] court convenience; and [ (7) ] the public interest in the pending civil and criminal actions.