**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**AN UNNAMED ATTORNEY,**
Respondent.

**No. 2006–SC–000520–KB.**

Supreme Court of Kentucky.

Nov. 22, 2006.

***OPINION AND ORDER***

The Kentucky Bar Association (KBA) requests that this Court find whether the respondent is guilty of violating SCR 3.130–1.16(d) for failing to take steps to protect a client upon termination of representation. The Board of Governors of the KBA was unable to reach the required number of votes to make a finding of guilt on this charge and, thus, has not recommended a sanction. If this Court finds the

respondent guilty of this charge, the KBA then requests that this Court determine the appropriate sanction and order him to pay the costs of this proceeding.

We note that the Board recommended that this Court find the respondent not guilty of two other counts of professional misconduct charged by the Inquiry Commission, namely violation of SCR 3.130–1.3 (requiring diligence in representing clients) and SCR 3.130–1.4(a) (requiring that lawyer keep client reasonably informed about the status of a matter). The KBA does not seek review of the Board's findings of not guilty as to these two charges.

The charges against the respondent arose out of his representation of a man in a proceeding to obtain visitation with his child. In May 2005, the man hired the respondent to file a motion for visitation in the family court. At that time, the respondent was a partner in a multiple partner law firm. The man paid the respondent $490.00, consisting of a $300.00 retainer and $190.00 for fees and costs. It is unclear whether the respondent deposited the man's payment into a law firm account or cashed or deposited the payment into an individual account.

According to the man, the respondent gave the man's mother a "verbal court date" of June 14, 2005, for a hearing on the motion. The respondent has stated that he actually told the man that the earliest time the court could hear the motion would be in June but that this time was not scheduled.

On June 14, 2005, the man showed up in court and was surprised to find that the respondent was not present and that his case was not on the docket. The respondent had not filed the motion. The man called the respondent's law firm, whose personnel told him that the respondent had left the firm in May and that no one

there had any knowledge of the court date. Someone at the firm told the man that he could either get his money back from the respondent or have another lawyer from the firm handle the case and gave the man the respondent's home phone number. The man left several messages for the respondent but did not receive a call back.

There is no indication in the record that the respondent ever attempted to notify the man of his intention to leave his law practice or that the respondent told anyone at his firm about the man's case before departing the firm. There is no indication in the record that the respondent arranged for someone else at his firm to take over the man's case or made other arrangements to make sure the case continued to progress despite his departure from the practice of law.

Shortly after that, the man filed a bar complaint against the respondent. In his letter responding to the bar complaint, the respondent stated that he regretted the difficulties that his conduct had caused the man and also stated that the man was entitled to a refund of his retainer if he did not obtain representation from the firm's attorneys to his satisfaction. Ultimately, other attorneys from the respondent's former firm took over the man's case, apparently to his satisfaction, and credited him with the amount paid as a retainer to the respondent.

The Inquiry Commission charged the respondent with three counts of professional misconduct: (1) violation of SCR 3.130–1.3 in failing to act with reasonable diligence in representing a client by performing no work on the motion for which he was retained to file; (2) violation of SCR 3.130–1.4(a) in failing to keep a client reasonably informed of the status of the matter by failing to adequately communicate with his client about the hearing date

and by failing to inform him of his leaving his law practice; and (3) violation of SCR 3.130–1.16(d)[1] in failing to take steps to protect a client upon termination of representation, specifically, "failing to give any notice to the client that he had left the practice of law, and would therefore necessarily be terminating his representation, and by failing to refund to the client any advance payment of fee." Because the respondent failed to file a timely response,[2] the case was submitted to the Board under the default provision of SCR 3.210(1). The Board recommended findings of not guilty as to Counts I and II but made no recommendation as to Count III (violation of SCR 3.130–1.16(d)) since "a minimum of eleven members of the Board were unable to come to a conclusion as to guilt or innocence on the third count[.]"[3]

The KBA has filed a notice for this Court to review the Board's recommendation under SCR 3.370(8). Specifically, the KBA has requested

> that the Court consider the record of this matter in determining whether Respondent violated SCR 3.130–1.16(d) and, should the court enter a guilty finding, determine the proper sanction. In addition, should Respondent be found guilty of violating SCR 3.130–1.16(d), he should be ordered to pay the costs of this proceeding.

The respondent did not file a brief in response to the KBA's Notice for Review.[4]

■ This Court is ultimately responsible for deciding whether an attorney is guilty of professional misconduct and must do so based on its de novo consideration of the pleadings and record.[5] In this case, our consideration of the respondent's "side of the story" is limited because the only document properly filed on his behalf was his one-page response to the man's KBA Complaint. So we must generally accept the facts to be those alleged by the man and found by the Board.

Recently, the KBA issued an ethics opinion addressing the issue of the ethical obligations of attorneys when leaving firms.[6] This ethics opinion conflicts with

---

1. SCR 3.130–1.16(d) states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expenses that has not been earned or incurred."

2. The respondent tendered a one-page response one day after the deadline for filing his response. He received written notice from the Clerk that his response could not be filed due to its untimeliness unless he filed a motion for and obtained permission to file a late pleading. But he failed to file a motion for permission to file an untimely pleading.

3. SCR 3.370(6) requires that the Board's findings and recommended sanctions "must be agreed upon by eleven (11) or three-fourths (3/4) of the members of the Board present and voting on the proceedings, whichever is less."

Since fourteen Board members were present and voted in the instant case, eleven votes were required to support any finding of guilt or innocence and any recommended sanction. Nine members of the Board voted to find Respondent guilty of Count III, and five members voted not guilty.

4. SCR 3.370(8) provides that "[t]he opposing party may file a brief within thirty (30) days thereafter" the Notice for Review.

5. *KBA v. Franklin*, 534 S.W.2d 459, 463 (Ky. 1976) ("[t]he action of the board of governors of the bar association is essentially a screening process. A final decision of guilt can be made only by this court, and it is done on the basis of a de novo consideration of the pleadings and the trial record.").

6. KBA Ethics Opinion, KBA E–424 (issued March 2005). This ethics opinion generally addresses ethical obligations when leaving a private firm, although some discussion appar-

some widely held views of lawyers that the client is a client of the firm rather than the individual lawyer that automatically continues with the firm without any notice of a responsible attorney leaving the firm.[7] In light of the respondent's default in failing to file a formal response to the Inquiry Commission's charge or to file a brief with this Court in response to the KBA's Notice of Review, we are not aware of any specific circumstances that would indicate that the man should have understood that he was retaining the firm as a whole, rather than the respondent individually. And since no one at the firm was apparently aware of the respondent's having taken the man's case before the respondent terminated his law practice, we find no basis to assume that the man had retained the firm rather than the respondent individually.

The KBA Ethics Opinion states, in pertinent part, that:

When a lawyer leaves a firm, the relationship between the parties will change, but both the departing lawyer and the firm must take reasonable steps to ensure that client interests are protected and that the requirements of RPC 1.16

are satisfied. To that end, each client for whom the departing lawyer currently is responsible, or for whom the lawyer plays a significant role in the firm's delivery of services, must be notified of the departure and of the client's right to determine who will represent him or her in the future. (This is not to suggest that notice must be given to every client for whom a departing lawyer has done any work. Where the departing lawyer's connection with a client is so limited that the client will not be affected by the departure-for example where the departing lawyer's only involvement with a client was to undertake some research at the request of a supervising lawyer—no notice is required.)

This duty to notify the client arises from the lawyer's duty to keep the client reasonably informed under SCR 3.130–1.4 and the client's right to counsel of his or her own choosing, as reflected in SCR 3.130–1.16 and 5.6.

(Footnotes omitted.) [8]

The Ethics Opinion goes on to make certain recommendations on content and

---

ently pertains mostly to an attorney leaving a particular firm but continuing in private practice in some capacity. KBA E–424 closely follows the substance of ABA Comm. On Prof'l Ethics and Grievances, Formal Op. 414 (1999) (*ETHICAL OBLIGATIONS WHEN A LAWYER CHANGES FIRMS*) (hereinafter ABA Formal Op. 99–414).

**7.** *See* John Leubsdorf, *PLURALIZING THE CLIENT–LAWYER RELATIONSHIP*, 77 Cornell L.Rev. 825, 833–835 (1992) (reviewing different theories of lawyer-client relationships applicable to lawyers practicing in firm, including the firm theory under which "the firm itself becomes the client's lawyer[.]") Leubsdorf notes that, in some respects, the firm theory is the "more realistic view" because "clients often look to the firm for representation, so that an individual lawyer is free to leave the firm and its cases without formality (at least when the lawyer was not in

charge of a case and the firm had enough lawyers available to provide a replacement.") Leubsdorf also assesses the firm theory as more accurately applied to large firms than to smaller firms: "[t]he clients of a large firm usually look to the firm for representation; this, however, may not be true of a smaller firm that consists of several individual practices." *Id.* at 835.

**8.** KBA Ethics Opinion, KBA E–424, p. 3 (issued March 2005). The responsibilities of other lawyers in the firm upon the respondent's departure is not at issue here especially in light of the respondent's failure to inform other attorneys that he had accepted the man's case before leaving the firm. But that issue was addressed by the Committee as follows: "[n]ot only will the departing lawyer have an obligation to make sure that the client is informed about the change, but those who remain with the firm may have obli-

adequacy of notice by expressing a preference for written notice, directing that the notice be respectful and not disparage anyone, and also stating that:

- Communication should not urge the client to terminate his or her relationship with the firm, but may indicate the departing lawyer's willingness and ability to continue to represent the client.
- Communication must clearly state that the client has the right to decide who shall represent him or her in the future-this includes the firm, the departing lawyer[,] or another lawyer.[9]

In the instant case, the respondent did not merely change firms. He left the law practice for a new career. So the man did not have the choice of continuing to have the respondent represent him. But under the Ethics Opinion, it was not proper to assume that the client would be represented by someone else in the firm or to allow his money back only if another lawyer from the firm could not represent him to his satisfaction.[10]

To fulfill professional responsibility under SCR 3.130–1.16(d), we find that under

the facts of this case, the respondent was required to tell the man that he was leaving the firm, inform other attorneys in the firm about the status of the man's case, offer to refund the unearned fee, and offer the man the choice of allowing someone else in the firm to represent him or another attorney not associated with the firm to represent him. In making this determination, we have considered carefully the facts of this particular case—notably, the fact that the respondent personally accepted the man's case; the fact that the man had contact only with the respondent and not with any other attorneys in the respondent's firm before the respondent left the firm; the fact that the respondent was a partner in the firm; and the lack of any other suggestion that the man retained the firm as a whole rather than the respondent individually (such as an engagement letter stating that the client has retained the respondent and the other lawyers in his firm).

We have recently held a solo practitioner responsible for providing basic notice to current clients of his/her departure from the practice of law.[11] We agree with the

---

gations as well. As noted by ABA Formal Opinion 99–414 (1999), 'firm members remaining, and especially those with supervisory responsibility, have an obligation under the Rules of Professional Conduct, and may have obligations as well under other law, to assure to the extent reasonably practicable that the withdrawal from the firm is accomplished without material adverse effect on any client's interests....' Recognizing this joint responsibility, the ABA Formal Opinion states that notice may come from the departing lawyer, from the firm, or from both. The Committee agrees with the ABA that joint notice is preferable, but recognizes that this is not always practical. The critical point is that the client receives notice from someone associated with the firm and that the notice impartially and fairly provides the information necessary for the client to make an informed decision about future representation." *Id*. Of course, in the

instant case, the responsibility for providing notice necessarily lay with the respondent due to his failure to inform his colleagues of having accepted the man's case.

9.  KBA Ethics Opinion, KBA E–424, p. 4 (issued March 2005).

10.  "At the time of a break-up, it is very likely that the departing lawyer will view certain current clients as 'his,' and the firm will regard the same clients as 'firm clients.' Irrespective of how the departing lawyer or the firm views a particular client, the client is not property and does not 'belong' to anyone." KBA Ethics Opinion, KBA E–424, p. 2, n. 2 (issued March 2005).

11.  *KBA v. Perry*, 102 S.W.3d 507, 507–508 (Ky.2003) (imposing discipline on attorney for failing to notify client that attorney was no

KBA Ethics Opinion that an attorney must notify clients of his/her departure from a particular firm or from the practice of law in general under certain circumstances. Such notice aids the client in exercising his or her "ultimate right to select counsel of his [or her] choice[.]"[12] Furthermore,

> [t]he impending departure of a lawyer who is responsible for the client's representation or who plays a principal role in the law firm's delivery of legal services currently in a matter (i.e., the lawyer's current clients), is information that may affect the status of a client's matter as contemplated by Rule 1.4.[13]

■ We find that the KBA Ethics Opinion too broadly imposes a duty of notification upon any departing attorney who has taken a "significant" role in delivering legal services to the client. Rather, we adopt the ABA view that such a duty of notification arises when the departing attorney "is responsible for the client's representation or ... plays a principal role in the law firm's delivery of legal services currently in a matter[.]"[14] Clearly, the facts of this case show that the respondent was the only attorney responsible for the man's case and that he played a "principal" role in delivering legal services to the respondent since no other attorneys from the firm were involved with the man's case until after the respondent left the firm.

■ We conclude that the respondent violated SCR 3.130–1.16(d). The KBA cites the case of *Aulenbach v. Kentucky Bar Association*,[15] which also dealt with a violation of SCR 3.130–1.16(d), as perhaps

suggesting an appropriate sanction. That attorney received a public reprimand and a thirty-day suspension. But that case is distinguishable from the instant case in two significant respects: (1) the client suffered greater prejudice as a result of the attorney's failure to notify her of his withdrawal or the trial date resulting in a judgment of over $6,000.00 being entered against her; and (2) the attorney was also found guilty of violating SCR 3.130–1.4(a) in that same matter and of violating SCR 3.130–8.3(b) in a different matter based on the attorney's being charged with driving under the influence on four occasions. So we conclude that the instant case does not necessarily merit the same sanction.

■ We have taken several factors into account in determining the appropriate sanction for the respondent. As a result of the respondent's violation, the man apparently suffered minimal delay in the resolution of his quest for visitation with his child and lost the use of approximately $500.00 of his money for some time before work on his case began. Fortunately, however, the prejudice he suffered was not as severe as that suffered by some other litigants upon their counsel's abandoning their case without notice—for instance, this is not a case where a client's suit is barred by the statute of limitations due to a lawyer's lack of diligence. Furthermore, we find that the respondent's violation is essentially one of negligence rather than of outright dishonesty or fraud and note the relatively recent date of authority on the issues presented by this case. We also

---

longer representing him in his case while stating that attorney's letter to other client concerning her retirement was sufficient notice to that client.).

**12.** ABA Formal Op. 99–414.

**13.** ABA Formal Op. 99–414 (footnotes omitted). We note that KBA E–424 imposes the

duty of notification on departing attorneys who played a "significant" rather than "principal" role in delivering legal services to the client.

**14.** ABA Formal Op. 99–414.

**15.** 151 S.W.3d 330 (Ky.2004).

note that with the exception of one Private Reprimand issued several years ago, the respondent has a clear disciplinary record. We are troubled by the respondent's failure to file responses to the Inquiry Commission's Charges or to the KBA's Notice of Review. So under the facts and circumstances of this case, we find the appropriate disciplinary sanction to be a private reprimand of the respondent.

ACCORDINGLY, IT IS HEREBY ORDERED that:

(1) The respondent is not guilty of two counts of professional misconduct as charged by the Inquiry Commission, namely, violation of SCR 3.130–1.3 (requiring diligence in representing clients) and of SCR 3.130–1.4(a) (requiring that lawyer keep client reasonably informed about the status of a matter);

(2) The respondent is guilty of one count of professional misconduct as charged by the Inquiry Commission, namely, violation of SCR 3.130–1.16(d) (failing to take steps to protect a client upon termination of representation). The respondent is hereby privately reprimanded for this; and

(3) In accordance with SCR 3.450, the respondent must pay all costs associated with these disciplinary proceedings against him, said sum being $149.80, and for which execution may issue from this Court upon finality of this Opinion and Order.

All concur.

ENTERED: November 22, 2006.

/s/ Joseph E. Lambert
Chief Justice