**KENTUCKY BAR ASSOCIATION,**
**Complainant,**

v.

**Britton P. FRANKLIN, Respondent.**

Supreme Court of Kentucky.

March 5, 1976.

Leslie G. Whitmer, Director, Kentucky Bar Association, Frankfort, for complainant.

Robert E. Delahanty, Louisville, for respondent.

PER CURIAM.

This matter comes before us on two disciplinary charges against the respondent, as follows:

1(a) That in the divorce case of *Brown v. Brown*, Civil Action No. 125849, Jefferson Circuit Court, he had received from Mary Jo Brown (the plaintiff) $185 in full payment of his fee and court costs and had thereafter failed and refused to satisfy a balance of $79.00 due and owing on the court costs.

(b) That after receipt of notice that the Inquiry Tribunal of the bar association would institute proceedings against him if the costs were' not paid within 10 days he reported to the bar association by letter that he had remitted the sum of $34.50 as the balance owing on the court costs, but in fact had not paid it.

The foregoing charge was filed on May 2, 1973.

2. That in June of 1971 he had accepted a $50 retainer fee to represent Paul Hunziker in the divorce case of *Hunziker v. Hunziker*, Civil Action No. 150574, Jefferson Circuit Court, but after appearing at one hearing on a preliminary matter took no further action and suffered a judgment to be taken against his client awarding alimony, maintenance and fees.

This charge was filed on December 10, 1973, and was later consolidated with the charge filed on May 2, 1973.

After an evidentiary hearing at which the respondent appeared in person and by counsel the trial committee in effect found him guilty on both charges and recommended his suspension from practice for 60 days. The Board of Governors concurred, and so recommends to this court, which has considered the evidence *de novo*.

We shall discuss the charges in the order in which they are listed above.

Mrs. Brown had brought suit for a divorce in March of 1969, after which, apparently, there were one or more delays by reason of tentative reconciliations. Eventually the untimely death of her attorney, the late E. P. Sawyer, necessitated securing other counsel, and she retained the respondent. She paid him $100 on March 31, 1971, $100 on October 15, 1971, $100 on February 3, 1972, and $185 on March 23, 1972. The receipt for the last payment shows that it was "for payment in full & court cost," etc.

The respondent prepared and filed an amended complaint for Mrs. Brown and on November 16, 1971, appeared in her behalf at a hearing on temporary support. In April of 1972 she and her husband signed a property-settlement agreement, but for some reason the husband's attorney, Roy Blandford, failed to sign it before it was filed, and shortly thereafter he (Blandford) moved to Texas. According to Mrs. Brown, on May 26, 1972, the respondent told her that the divorce would be final on the following Monday, but she later checked into the records herself and learned that the divorce had not been granted. She made several unsuccessful efforts to get in touch with the respondent and finally, in August of 1972, employed Martin Sullivan, another attorney.

Sullivan checked the records in the clerk's office and found that everything was in order for the divorce to go through except for three things: (1) the respondent had not signed the amended complaint; (2) Blandford had not signed the settlement agreement; and (3) the cost bill had not been satisfied. He called and left a message at the respondent's home, but on the next day, August 24, 1972, chanced to see him at the court house, at which time they discussed the matter.

Sullivan testified that on this occasion the respondent told him the costs had been paid. The respondent says, however, that what he told Sullivan was that there was "some mix-up," by which he meant Blandford's failure to sign the agreement, and that he would straighten it out as soon as he could. In any event, after making another inquiry at the clerk's office Sullivan on the same day (August 24, 1972) sent a letter asking the respondent for a receipted cost bill. Receiving no answer, he wrote again on September 13, 1972. Again there was no response, and on September 19, 1972, Sullivan advised the respondent by letter that he had filed an order substituting counsel, that the costs still had not been paid, and that if they were not satisfied within 10 days he was asking that the matter be referred to the bar association.

On October 1 and 2, 1972, the respondent wrote Sullivan two letters in which, among other things, he stated that the correct amount of the cost balance was $98.75 and that on August 24, 1972, a friend of his had gone to the clerk's office to tender payment of that amount but had not done so because he was told that this was not the correct figure. In both letters the respondent took Sullivan to task for having alleged that he (the respondent) had been paid and was holding the sum of $185 for court costs.

Meanwhile, Sullivan reported the difficulty to the bar association and proceeded to have Mrs. Brown's divorce granted on October 26, 1972, entailing additional court costs of $34.50. Actually the correct amount of costs before Sullivan's intervention had been $75.75, a bill for that amount had been sent by the clerk on June 15, 1972, and it had been received by the respondent.

On November 17, 1972, the respondent wrote a letter to the bar association explaining that the proof in Mrs. Brown's case had been filed by the reporter on June 15, 1972, at which point all that remained to be done was to refer the file to the commissioner, pay the costs, and submit the case on a motion for judgment, but that he had been unable to take these steps because (a) the new "no-fault" divorce law had become effective "and the exact procedure was not then clear," (b) the husband's attorney, Mr. Blandford, had given up law practice and it had not been until the middle of July, 1972, that the respondent "was able to resolve several necessary matters with Mr. Michael Runner, who replaced Mr. Blandford," and (c) on June 30, 1972, "the Jefferson Circuit Court began its summer recess and did not reconvene for normal business until September 25, 1972."

In this letter of November 17, 1972, the respondent further explained that he had experienced extreme difficulty in obtaining the correct costs figure from the clerk, but "The correct amount which was recently determined as $75.75, has been remitted to the Clerk."

In his answer filed in this proceeding on May 26, 1973, the respondent stated that he had made this payment of $75.75 on October 3, 1972. According to the clerk's record it was received on December 7, 1972, but for some unaccountable reason was not posted until January 4, 1973. (Meanwhile, of course, the additional charges of $34.50 heretofore mentioned had been incurred.)

On January 28, 1973, in response to a letter of January 18, 1973, from the bar association requesting him to furnish evidence that the costs had been paid, the respondent reported that he had remitted the balance of $34.50 to the clerk and would forward a certification as soon as he received it. A deputy clerk testified that in March of 1973 he found loose in the Brown file a letter from the respondent dated January 28, 1973, stating that he was tendering therewith "under protest, the sum of $34.50, which is said to be the balance of the costs herein. If this amount is in dispute, I request that the costs be refigured and a correct bill certified to me as soon as possible." There was, however, no record to indicate that any such amount actually had been received by the clerk. The letter did not bear the customary stamp to show when it was received, nor did it have holes punched in it for securing into the file. The clerk's records show that $34.50 was received on May 14, 1973, after this disciplinary proceeding had commenced.

According to the respondent's testimony, the $34.50 alleged to have been tendered by his letter of January 28, 1973, was in the form of a check and had been returned to him. He denied having planted the letter in the clerk's file.

In his testimony the respondent explained, and it seems to have been conceded, that if the record in the Brown case had been submitted to the commissioner without Blandford's signature on the settlement agreement it would have been rejected. Hence it was necessary for a successor to be substituted for Blandford. Eventually he was succeeded by attorney Michael Runner, who, said the respondent, was at military camp and on vacation during part of the summer of 1972 and could not be "pinned down" about signing the agreement in lieu of Blandford. And, according to the respondent, the circuit court was in limbo until September anyway. Yet he produced a letter from Runner dated July 25, 1972, to the effect that "several weeks ago . . . you assured me . . . that we would take this case up for final decree. I would appreciate hearing from you at your earliest convenience so that we may finish this

file. The agreement has been filed [Runner evidently did not realize at the time that Blandford had not signed it], interrogatories taken, the only steps to take are to pay the court costs and file another affidavit reaffirming Mrs. Brown's interrogatories. Please advise me when we may file the final decree."

As the foregoing recitation indicates, on May 2, 1973, when the disciplinary charge arising from the Brown case was filed, the balance actually owed on the court costs was $34.50. That the bar association itself apparently had been unable to ascertain the correct amount and state it in the charge lends some credence to the respondent's explanation that he never had been able to get a correct statement from the clerk.

The impact of this charge is further blunted by the bungling manner in which the records of the Jefferson Circuit Court Clerk seem to have been handled. There is, for example, the notation that the $75.75 payment posted on January 4, 1973, actually had been received on December 7, 1972, and reposed on someone's desk during the interim. This circumstance injects an equivocal note into what might otherwise be conclusive evidence against the respondent, and it is compounded by the failure of any of the participants in the proceeding to ascertain the date on which treasurer's check No. 2056342, by which the $75.75 was paid, was issued by the Louisville Trust Company.

It will be recalled that in his letter to the bar association dated November 17, 1972, the respondent stated, "The correct amount which was recently determined as $75.75, has been remitted to the clerk." The explanation given in his testimony was, "I probably had reference to when I tendered, or we tendered the seventy-five, seventy-five, and the clerk computed the costs to be ninety-eight dollars and something . . . . The point was that there were several tenders of the costs, and it was not until December 7th, that the tender was accepted at seventy-five, seventy-five, being correct . . . on several occasions, the tender was refused because the amount tendered was considered, by the clerk, not correct. And it was only until December that the amount was tendered and accepted by the Clerk, only it was then that the Clerk considered this amount to be the correct and full costs. I have no explanation why they received it on December 7th, yet did not give it a credit until January the 4th."

Despite the equivocal circumstances in the case, it is uncontroverted that on June 15, 1972, a correct cost bill for $75.75 was sent to the respondent, that he received it, and that Mrs. Brown had advanced him the money to pay it. Regardless of what defects stood in the way of submitting the case for judgment, he should have paid it then. His attempts to explain why he did not do so smack more of artifice and evasion than the truth. There were just too many occasions on which he reported the costs to have been paid, when in fact they had not been paid, for his account of the matter to be worthy of credence. It seems all too clear that only when the bar association came snapping at his heels did he have any inclination to move, and that otherwise he probably would never have moved at all. We cannot avoid the conclusion that on each of the occasions, in November of 1972 and January of 1973, when he reported to the bar association that the costs in the respective sums of $75.75 and $34.50 had been paid or "remitted" he had in fact neither paid nor tendered them.

Although the figures stated in charge 1(a) were not correct, the charge was sufficient to provide notice of the substance of the complaint, which was that the respondent had collected in full from his client and had failed to pay the costs without any reasonable excuse for such failure. Charge 1(b) is but another facet of the same basic complaint. We find him guilty of the charge.

On the Hunziker matter we are not convinced that the evidence warrants a finding of guilt. Having been sued by his wife, Hunziker paid the respondent $50 towards a

$75 retainer fee. Hunziker says he retained the respondent to represent him throughout the divorce proceeding. The respondent says he was retained only for a preliminary hearing which had been set. Some time after the preliminary hearing the respondent telephoned Hunziker's home several times and left word for Hunziker to get in touch with him. According to the respondent, these calls were not made because he was continuing to represent Hunziker, but because the wife's attorney had told him he was about to have Hunziker held in contempt for failing to comply with a temporary support order and the respondent was merely trying to get the word to him. At any rate, Hunziker admitted in his testimony that he had received these telephone messages and that he tried to reach the respondent but never was able to find him. Giving the respondent the benefit of the doubt, we find the case on this count a little too fuzzy to provide a reliable basis for disciplinary action.

■ We are not impressed with the respondent's arguments that our disciplinary procedure denies him due process and equal protection. The action of the board of governors of the bar association is essentially a screening process. A final decision of guilt can be made only by this court, and it is done on the basis of a de novo consideration of the pleadings and the trial record. *Kentucky State Bar Association v. Stivers,* Ky., 475 S.W.2d 900, 904 (1972). Nor is it necessary that the charge be proved beyond a reasonable doubt, though it is probable that each judge of this court, in deciding so serious a matter, actually applies that criterion anyway.

■ The respondent is fortunate that the bar association did not see fit to charge him with converting his client's funds to his own use. He might very well have fared considerably worse. As it is, we conclude that by reason of his slipshod practice in the matter of costs in the *Brown* case he should be suspended from the practice of law in this Commonwealth for a period of six (6) months.

It is so ordered.

All concur.