**S. Rush NICHOLSON, Appellant,**

v.

**JUDICIAL RETIREMENT AND RE-MOVAL COMMISSION, Appellee.**

Supreme Court of Kentucky.

Oct. 31, 1978.

Frank E. Haddad, Jr., Louisville, for appellant.

Paul A. Willis, Executive Secretary, Judicial Retirement and Removal Commission, Lexington, for appellee.

PER CURIAM.

The Judicial Retirement and Removal Commission issued a public censure directed to Circuit Judge S. Rush Nicholson of the Jefferson Circuit Court. Nicholson sought review by this court. We rejected his various constitutional challenges to the procedures and actions of the Commission. We vacated the order of public censure and remanded the case to the Commission for a determination of whether Nicholson's actions constituted gross and persistent incompetence or fell into the category of "an erroneous decision made in good faith." See *Nicholson v. Jud. Ret. and Removal Com'n,* Ky., 562 S.W.2d 306 (1978). The Commission declared on remand that "substantial and inexcusable errors were made by Judge Nicholson which cannot be regarded as having been made in good faith." Nicholson appeals from that determination.

The operative facts are not in dispute. David Ray Bell was tried in Judge Nicholson's court. He was convicted and sentenced to one year imprisonment. The prosecutor thought he had a very weak case. He and the defense attorney made an agreement. The defense agreed to refrain from filing a motion for a new trial or from seeking appellate review. The prosecution agreed to withdraw its pending motion to revoke a previous probated sentence and instead to have the court enlarge the period of probation on that sentence to commence running when Bell was released from the penitentiary. It was also agreed that Bell would serve a one-year sentence. Judge Nicholson was advised of the agreements and expressed his approval.

Bell began serving his sentence on June 13, 1975. After he had served about five months of the one-year sentence, Bell was informed by the Parole Board that his old parole was being revoked.

In January 1976, Bell's attorney filed a "Motion to Set Aside and/or Vacate Conviction and Illegal Sentence." The grounds alleged were that KRS 439.352 mandated that Bell "should have accrued additional time toward the previous sentence which he had been sentenced to the penitentiary on. That the Parole Board failed to revoke his prior sentence, and therefore, he was entitled to be considered for parole in October, 1975." The motion also asserted: "The Parole Board refused to consider him for parole and violated his parole and has indicated his next expiration will be December 1977, contrary to his constitutional rights to a hearing, etc. on revocation." This motion was not signed by the movant, and was not verified. It contained no allegation of error or deprivation of rights in his trial. The Parole Board was not given notice of the motion; there was no proceeding at which evidence was presented.

Judge Nicholson treated this motion as an application for post conviction relief under RCr. 11.42. On January 19, 1976, he entered an order reciting that after a hearing and it appearing from the record that the defendant was entitled to 55 days credit prior to entry in the Reformatory on June 10, 1975, and "the defendant having remained in custody at LaGrange since that

date; and it further appearing that the acts of the Parole Board in revoking a previous sentence were improper under KRS 439.352, in that it was revoked contrary to his constitutional rights to a speedy hearing; . . . ." It was directed that the sentence previously imposed was vacated and that Bell be immediately released from the Reformatory at LaGrange. The "hearing" recited in the order was apparently a joint appearance by the defense attorney and the prosecutor who advised the judge that they agreed the disposition made was proper.

Neither the judge, the prosecutor, nor the defense attorney read KRS 439.352, and this was revealed when the penitentiary officials refused to carry out the order. KRS 439.352 mandated that Bell's prior parole was automatically revoked by his recommitment on a new sentence received for commission of a crime while on parole. The chairman of the Parole Board advised Judge Nicholson of the correct effect of KRS 439.352 when they conferred about the problem of Bell's release from confinement.

After receiving the advice of the Chairman of the Parole Board, Judge Nicholson entered a second order. It recited that motion "having been made to vacate the conviction and illegal sentence of the defendant, . . . ." and it directed that the previous sentence be vacated and that Bell be immediately released from custody.

■ Upon review of the Commission's actions we apply the standard of proof described as "clear and convincing."

"Of the courts of other jurisdictions which have considered the question of the appropriate standard of proof, all have rejected the beyond-a-reasonable-doubt standard that controls criminal prosecutions. Most of these same courts have also declined to adopt the civil preponderence-of-the-evidence standard in favor of the seemingly higher burden of proof by clear and convincing evidence . . . .

"Given the character of the proceedings below and the nature of the public office, we are persuaded that the appropriate standard to be applied in regard to Commission proceedings is that of clear and convincing evidence."

*In re Hanson*, Alaska, 532 P.2d 303, 307–08 (1975) (footnotes omitted). We have adopted this standard by Rule SCR 4.160.

■ Judge Nicholson stated that he thought the agreement made by counsel ought to be kept. He and a former judge of the Jefferson Circuit Court testified that RCr. 11.42 was used as an "overall blanket to grant relief where we thought it was equitable and fair to do so." A busy trial judge must rely in some degree on the competence and integrity of the attorney regularly appearing before him. The prosecuting attorney and the defendant's attorney recommended the action the judge took.

None of Judge Nicholson's conduct was directed toward personal gain, but was, according to his evidence, motivated by a desire to prevent what he perceived to be the potential destruction of an individual's rights by abuse of authority at worst or error and mistake concerning the enforceability of the agreement between counsel at best. See *In re Hanson*, supra.

■ We agree with the Commission that the handling of the matter by the judge and counsel was thoroughly inept. If the Jefferson Circuit Court is continuing to use RCr. 11.42 as an overall blanket to grant relief, any time the individual judge thinks it is "equitable and fair" let this be notice to cease such practice immediately. The requirements of RCr. 11.42 must be observed by the Jefferson Circuit Court as they are observed by the other circuit courts of this state.

■ In conclusion, we are not persuaded that the evidence was sufficiently "clear and convincing" that Judge Nicholson acted in bad faith or that the pattern of errors rose to the level of "gross and persistent incompetence."

We entertain the highest regard for the Commission. It has served the public interest in this case. It has brought to light a practice in a circuit court that needed correction. The judge by the attendant public-

ity has already paid the penalty for his mistakes. We are gratified that no dishonest conduct can be laid at his door.

We consider the matter ended.

All concur except LUKOWSKY, J., who dissents with separate opinion in which STEPHENSON, J., joins.

LUKOWSKY, Justice, dissenting.

Section 121 of the Constitution of Kentucky provides that judges may be disciplined by the Commission for good cause, that the Commission is a state body and that its actions are subject to judicial review by this court. It is unlike the Bar Association which has life, form and a disciplinary function in regard to lawyers only by grace of the rules of this court. Kentucky Constitution, Sec. 116; SCR 3. In the former case the Commission is charged by the people to maintain discipline. In the latter case this court is charged by the people to maintain discipline.

This independent creation, life and charge make it perfectly clear to me that we must measure the Commission's actions with a totally different yardstick than we use in disciplinary cases involving lawyers. We are not directly charged with the duty to discipline, consequently, we are not the ultimate finders of fact. See *Kentucky Bar Association v. Franklin*, Ky., 534 S.W.2d 459 (1976). We are not privileged to treat the findings of the Commission as advisory and find facts for ourselves.

The Commission found that Judge Nicholson granted Bell's RCr 11.42 motion not because of any improper action by the Parole Board as his order stated, but for the unarticulated reason that the agreement which induced Bell to waive his right to file a motion and grounds for a new trial and appeal his conviction had not been carried out. As a result, those who might consult the record would be misled as to the

grounds for his decision. The Commission concluded that judges can not be allowed to be dissemblers and that conduct of this nature brings the judicial office into disrepute.

The Commission saw and heard the witnesses and had the opportunity to evaluate their credibility and assign appropriate weight to all or parts of their testimony. Giving due regard to these factors it can not be said that its finding is clearly erroneous.[1]

Its conclusion is neither arbitrary nor capricious. Its action is within its jurisdiction and the discipline imposed is permissible and not excessive. SCR 4.300, Canons 1 and 2 A; SCR 4.020(1)(b)(v).

I would affirm the final order of the Commission.

I am authorized to state that STEPHENSON, J., joins in this dissent.

---

1. The majority finds that the standard of review to be applied by this Court to the Commission's actions is "clear and convincing." Clearly, this is the standard of proof the Commission is to use in making its findings and is not the standard to be applied by this Court in reviewing the Commission's actions. SCR 4.160. The standard to be applied on judicial review of the Commission's findings is whether such findings are "clearly erroneous." SCR 4.290(1); CR 52.01.