Honorable Tamra GORMLEY, Family
Court Judge, Fourteenth Judicial
Circuit, Appellant,

v.

JUDICIAL CONDUCT COMMISSION,
Appellee.

Nos. 2009–SC–000736–RR,
2010–SC–000010–RR.

Supreme Court of Kentucky.

Aug. 26, 2010.

As Modified on Denial of Rehearing
Jan. 20, 2011.

720

John Wickliffe Hays, William A. Hoskins, III, Jackson Kelly PLLC, Lexington, KY, Counsel for Appellant.

James D. Lawson, Executive Secretary, Judicial Conduct Commission, George F. Rabe, Lexington, KY, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

The Honorable Tamra Gormley, Judge of the Fourteenth Judicial Circuit,[1] Family Court Division, pursuant to SCR 4.290, appeals from two final orders[2] of the Judicial Conduct Commission, which found three counts wherein Judge Gormley violated the Kentucky Code of Judicial Con-

---

1. The Fourteenth Judicial Circuit includes Bourbon, Scott, and Woodford Counties.

2. 2009–SC–000736–RR covers the Order, dated October 30, 2009, containing Counts I and II; 2010–SC–000010–RR covers the Order, dated December 22, 2009, containing Count V. The appeals were consolidated by this Court.

duct.[3] For the violations in Counts I and II, the Commission imposed a public reprimand and suspended Judge Gormley from her duties as Family Court Judge, without pay, for a period of forty-five days. For the violations in Count V, the Commission imposed a public reprimand. We affirm in both appeals.

## COUNT I

Count I arose out of a marriage dissolution action[4] and a domestic violence action[5] in the Scott County Family Court. Judge Gormley received a report from the Family Violence Project on December 19, 2007, concerning a social worker's belief of the husband's dangerous propensities. A hearing was scheduled for February 20, 2008, to consider a *pro se* motion filed by the wife for a modification of the no contact provision of the domestic violence order against her husband. Although both parties had counsel of record, both parties appeared that morning without their lawyers. While the parties were waiting in the hall way of the courthouse for their case to be called, they had a conversation.

A bailiff informed Judge Gormley that witnesses had reported that the husband had contact with the wife in the hallway and had attempted to convince her to leave the courthouse. Judge Gormley interviewed two of the witnesses before the hearing and also heard that the previous night, the husband, at the wife's invitation, had visited the wife at her home. Judge Gormley had the parties called into the courtroom.

Neither party had his/her lawyer present. Judge Gormley, without notice to the husband that a criminal contempt of court hearing was to be held, proceeded to conduct the hearing. Judge Gormley failed to advise the husband that he had the right to counsel, that he did not have to respond to questions by the Court, and that his answers to the Court's questions might be used to subject him to criminal contempt sanctions. Judge Gormley conducted an impromptu summary hearing by calling one witness for questioning about the occurrence in the courthouse hallway. She did not allow the husband to question this witness and denied the husband's request to review security tapes from the hallway cameras that may have provided information about the events in the courthouse hallway (then being denied by the husband). Judge Gormley questioned the husband under oath and learned that he had contact with his wife the night before and again that day in the hallway of the courthouse.

Based on the *ex parte* information she had obtained from the two witnesses, the bailiff, and the information obtained from the husband in her questioning, Judge Gormley found the husband in contempt of court and sentenced him to six months in jail for criminal contempt. On appeal, the Kentucky Court of Appeals reversed Judge Gormley's contempt finding and remanded the matter to the Scott Family Court "for an appropriate evidentiary hearing concerning all the allegations of contempt."

By a vote of 6–0, the Commission found that as to Count I:

> Judge Gormley engaged in misconduct in office and failed to observe high standards of conduct in violation of Canon 1, failed to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary in viola-

---

**3.** SCR 4.300.

**4.** Case No. 07–CI–00726.

**5.** Case No. 05–D–00153–002.

tion of Canon 2A, failed to adhere faithfully to the law in violation of Canon 3A and B(2), failed to accord a party (the husband) the right to be heard, considered ex parte communications with witnesses, and independently investigated facts in violation of Canon 3(B)(7), and failed to dispose of judicial matters fairly in violation of Canon 3(B)(8).

## COUNT II

Count II arose out of a dissolution of marriage action in Woodford County. The parties were divorced on March 26, 1998, in Woodford County.[6] The parties were awarded joint custody of their two minor children, a daughter, age four, and a son, age two. The husband was designated primary custodian of both children. Shortly after the divorce, the husband moved to Rowan County with the children; and the wife moved to Franklin County. On July 15, 2008, the husband still lived in Rowan County; and the wife still lived in Franklin County. On this date, the wife visited the Circuit Clerk in Woodford County seeking custody of the children. The wife received a blank motion form, on which she wrote the following request: "Emergency temporary custody order. Evaluation and Assessment for children for emotional, verbal and physical abuse. Medical and psychological assessments." The wife signed the form (not verified), and it was filed with the divorce case number. The wife visited Judge Gormley the same date and requested emergency *ex parte* relief, stating that her daughter, now fourteen, had recently called her to state that her father, the husband, had physically abused her by yanking her out of bed by her hair. The wife also stated that recently, when she picked up her daughter from the husband's house to attend a church event, her daughter stated to her that she did not want to go back to her father's house because she did not feel safe there. Based on these oral statements from the wife, Judge Gormley converted the motion for a change of custody (in the divorce case) to a petition for an emergency protective order (EPO), with a new case number.[7] She issued an EPO and noticed the husband for a hearing on July 24, 2008, to consider a domestic violence order (DVO).

The husband appeared on July 24, 2008, with his attorney, who was a bit confused as to why the husband had been summoned because there was no petition for an EPO on file. Counsel's motions to dismiss or to transfer to Rowan County (where the children lived) were denied by Judge Gormley. She did, however, continue the case until August 14, 2008, to give the attorney time to prepare for the DVO hearing.

On that date, the husband, through counsel, renewed his motions to dismiss or to transfer the case to Rowan County. The motions were summarily denied. At that point, Judge Gormley announced that she was ready to go forward on the DVO but would rather get an agreement from everybody for a modification of custody in the divorce case.[8] She explained that if there were an agreed order in the divorce case, she would convert the DVO to a restraining order, dismiss the DVO, and take it out of the court's electronic database. She would then give the wife primary custody of her daughter with certain conditions for visitation with the father, such as counseling for the father and the daughter. Counsel resisted an agreed order, informing the judge that if that was

---

6. Case No. 95–CI–00306.

7. Case No. 08–D–00050–001.

8. Case No. 95–CI–00306.

going to be the order, to enter it as the court's order. Judge Gormley was irritated with that suggestion, insisting that it had to be an agreed order with no right to appeal and that it had to be settled that day, once and for all. When counsel again declined to agree, Judge Gormley addressed the husband directly, informing him there would be an agreed order (in the divorce case) changing custody to the mother with visitation under certain conditions, with no appeal, or she would enter a DVO with no contact between the father and his daughter. The father quickly consented to an agreed order. The father explained to Judge Gormley that "you're all talking a lot of things I don't understand," but he would agree to whatever it took to get visitation with his daughter. Judge Gormley then had the daughter brought into the courtroom and worked out the conditions of visitation and related matters.

On September 2, 2008, the Woodford County Attorney made a motion to transfer the case to Rowan County for purposes of determining the mother's child support arrearages. Judge Gormley denied the motion and *sua sponte* suspended support payments for the daughter.

Sometime after the September 2, 2008, hearing, Judge Gormley learned that the mother had been arrested on a flagrant nonsupport warrant and was still in jail. Judge Gormley *sua sponte* scheduled a hearing on custody for September 11, 2008. At that hearing, counsel for the father inquired of Judge Gormley the purpose of the hearing. Judge Gormley explained that she was upset that the father had started the nonsupport action because he lost the custody battle for the daughter and that she (Judge Gormley) was going to have the Cabinet investigate the father's relationship with his son because she

(Judge Gormley) was of the opinion that the father should not have custody of the son.

When the Woodford County Attorney explained that the flagrant nonsupport case started long before the start of the change of custody hearing, Judge Gormley put the father under oath and demanded to know what actions he took concerning the non-support, both before and after the August 14, 2008, custody hearing. Judge Gormley did order a "[h]ome evaluation of [the father's] home re: safety and well being of son"; and because the mother was in jail, Judge Gormley transferred custody of the daughter to friends of the mother with a provision of no contact with the father until further order of the court.

The father's attorney received an emergency stay and eventually a writ of prohibition from the Court of Appeals (which this Court affirmed),[9] prohibiting the Woodford County Family Court from enforcing its orders in this case and from any further action stemming from the motion for a change of custody. The daughter was ordered returned to her father's custody immediately.

The Judicial Conduct Commission, by a 5–1 vote, found

by clear and convincing evidence that Judge Gormley's actions in the litigation described in Count II violated SCR 4.020(1)(b)(i) and (v) and constitutes misconduct in office and violations of the Code of Judicial Conduct. Specifically, the Commission finds that Judge Gormley failed to observe high standards of conduct in violation of Canon 1, that she failed to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary in viola-

---

9. *Gormley v. Dameron*, No. 2009–SC–000292– MR, 2009 WL 3526500 (Ky. Oct. 29, 2009).

tion of Canon 2A, that she failed to maintain faithful obedience to the law and impartiality in violation of Canon 3A and B(2), that she acted with bias and prejudice and was not impartial in violation of Canon 3B(5), that she failed to accord a party (the father) the right to be heard according to law and considered ex parte communications with the mother in violation of Canon 3B(7), and failed to dispose of judicial matters fairly in violation of Canon 3B(8).

## COUNT V

Count V arose as a result of a standing order (Standing Order Re: Toyota Child Support Modification) dated May 8, 2009, of Judge Gormley for the Fourteenth Judicial Circuit. The standing order arose as a result of concerns that the Scott County Attorney's Office had in its child support office. Based on a rumor that a semi-annual bonus was not going to be paid by Toyota that year, the office staff was afraid of being inundated with requests by Toyota workers for child support modifications. The Scott County Attorney requested a written order be entered providing no modification of child support would be considered for Toyota employees until after December 31, 2009. Judge Gormley signed an Order on May 8, 2009; and it was entered May 11, 2009, in the Scott Circuit Court Clerk's Office. The Order was also entered May 12, 2009, with the Bourbon Circuit Court Clerk and entered May 14, 2009, with the Woodford Circuit Court Clerk. The Order was styled, "STANDING ORDER RE: TOYOTA CHILD SUPPORT MODIFICATION." The body of the Order provided:

IT IS HEREBY ORDERED that no modifications of child support shall be considered until December 31, 2009[,] for employees of Toyota Motor Manufacturing. If at that time the statutory

15% has been met[,] then the Court may consider modification at that time.

The Order was an outright prohibition on child support modifications. Even though the original concern was with the anticipated increase in filings due to the possibility of no semi-annual bonuses, the Order contained no reference to said bonus issue nor did the Order exempt modification for other reasons, such as salary increases, medical expenses, or other changes in circumstances that are normally considered by a court.

Within days of the Order being entered, Toyota announced that it would be paying the bonuses. Also, near the end of May 2009, the Executive Secretary of the Judicial Conduct Commission notified Judge Gormley of the Commission's concern over the May 8, 2009, Order. Nevertheless, Judge Gormley waited some six weeks, until July 13, 2009, to rescind the May 8, 2009, Order.

As a result of entering the May 8, 2009, Order in the three counties, the Judicial Conduct Commission found, by a 5–1, vote that Judge Gormley

violated SCR 4.020(1)(b)(i) and (v) in that her actions constituted misconduct in office and violated SCR 4.300, the Code of Judicial Conduct. Specifically, she failed to observe high standards of conduct in violation of Canon 1; she failed to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A; she failed to be faithful to the law in violation of Canon 3A and B(2); she failed to accord every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law in violation of Canon 3B(7) and she failed to dispose of all judicial matters prompt-

ly, efficiently and fairly in violation of Canon 3B(8).

## PENALTY

For the violations in Count I and Count II, the Commission imposed a public reprimand and suspended Judge Gormley from her duties as a Family Court Judge, without pay, for a period of forty-five days. For the violations in Count V, the Commission imposed a public reprimand. The Commission found Judge Gormley not guilty of the remaining counts, which need not be discussed further.

## APPEAL

Judge Gormley appealed from both Final Orders of the Judicial Conduct Commission.[10] We consolidated the appeals.

### A. Standard of Review.

Section 121 of the Kentucky Constitution authorizes the Commission to suspend without pay, or to remove, a judge or justice for good cause, with judicial review directly to the Supreme Court. The evidence to sustain the charges before the Commission must be "clear and convincing."[11] On appeal, this Court must accept the findings and conclusions of the Commission "unless they are clearly erroneous" or "unreasonable."[12] This Court has the power to affirm, modify, set aside, or remand orders of the Commission.[13]

### B. We Affirm as to Count I.

On appeal, Judge Gormley argues that the Judicial Conduct Commission does not have jurisdiction over what should have been appeals of judicial decisions. That is, the Commission reviewed judicial decisions for alleged legal errors and sought to impose sanctions by calling it judicial misconduct.

### 1. Improper Summary Criminal Contempt.

More specifically, as to Count I, Judge Gormley asserts that she had the authority and the right to punish the husband in a summary proceeding for direct criminal contempt; and that if any errors were made, the husband's remedy was through an appeal, not through the Judicial Conduct Commission. She cites for authority SCR 4.020(2), which provides that "[a]ny erroneous decision made in good faith shall not be subject to the jurisdiction of the Commission."

An explanation of a court's contempt powers is in order. "Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court."[14] Contempt can be classified as civil or criminal. Civil contempt is when someone fails to follow a court order to do something.[15] That something is usually for the benefit of a party litigant (e.g., pay child support, allow visitation, fix something by a certain date, move a driveway, clean up a spill, close a business by a certain hour, provide discovery, etc.). A judge may incarcerate someone for civil contempt in order to motivate the person to obey the court order, but the contemptuous one is entitled to be released upon

10. Pursuant to SCR 4.290.

11. SCR 4.160; *Wilson v. Judicial Retirement & Removal Comm'n,* 673 S.W.2d 426, 427 (Ky.1984).

12. *Id.* at 427–28.

13. *Kentucky Judicial Conduct Comm'n v. Woods,* 25 S.W.3d 470, 472 (Ky.2000); SCR 4.290(5).

14. *Commonwealth v. Burge,* 947 S.W.2d 805, 808 (Ky.1996).

15. *Id.*

compliance with the court's order.[16] Criminal contempt, on the other hand, is when a person disobeys a court order out of disrespect for the rules or orders of court. A contemptuous person can be incarcerated for criminal contempt; but unlike civil contempt, the primary purpose of criminal contempt is to punish the contemptuous conduct.[17]

> Criminal contempt can be either direct or indirect. A direct contempt is committed in the presence of the court and is an affront to the dignity of the court. It may be punished summarily by the court, and requires no fact-finding function, as all the elements of the offense are matters within the personal knowledge of the court. *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Indirect criminal contempt is committed outside the presence of the court and requires a hearing and the presentation of evidence to establish a violation of the court's order. It may be punished only in proceedings that satisfy due process. *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925).[18]

 Judge Gormley summarily held the husband in contempt of court for his actions that occurred, outside of her perception, in the hallway and at the wife's home. However, as this was a case of indirect criminal contempt, summary proceedings were inadequate.[19] As the Commission correctly held:

> While a court undoubtedly has the power to hold a person in contempt of court for actions that occur outside the sensory perception of the judge (as was true in this situation), the court may not exercise that power without holding a hearing that provides the person with advance notice of the contempt proceeding and with a full opportunity to be heard and that is conducted in full accord with a person's rights to due process of law (including right to assistance of counsel, right not to answer questions that could result in criminal sanctions, the right to cross examine witnesses, and the privilege against self-incrimination).

Judge Gormley clearly erred in holding a summary criminal contempt proceeding for indirect criminal contempt in Count I, and the Commission so found.[20]

### 2. SCR 4.020(2) is Inapplicable to the Misconduct in this Case.

Finding Judge Gormley clearly erred on the law is only the first half of the analysis.[21] Judge Gormley, citing SCR 4.020(2), asserts that she made the decision in good faith and cannot be subject to the Commission's jurisdiction for good faith, but erroneous, decisions. To err is human. Our present Kentucky Constitution, Section 115, recognizes that a judge may err by providing most judgments are subject to at least one appeal. A party that believes the judge erred has the right to appellate review to seek a change in the judgment—that is judicial review. If the judge erred, the judgment can be corrected. Incompetent judges can be eliminated at the ballot box.[22]

**16.** *Id.*

**17.** *Id.*

**18.** *Id.*

**19.** *Id.*

**20.** *See In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

**21.** *See Nicholson v. Judicial Retirement & Removal Comm'n*, 573 S.W.2d 642 (Ky.1978) (the decision on remand).

**22.** *Nicholson v. Judicial Retirement & Removal Comm'n*, 562 S.W.2d 306, 310 (Ky.1978).

### i. Judge Gormley acted in bad faith.

Judicial misconduct is different. The Judicial Conduct Commission's review is not focused merely on the judge's findings, conclusions, and ultimate judgment, but on the judge's demeanor, motivation, or conduct in following (or in not following) the law. The Commission conducted its review and concluded the errors in Count I were so egregious that Judge Gormley could not claim the errors were made in good faith. We believe Judge Gormley's handling of the matter, together with the egregious rulings, displayed a bias or preconception or a predetermined view against the husband so as to impugn the impartiality and open-mindedness necessary to make correct and sound rulings in the case. In other words, we agree with the Commission's implicit finding that Judge Gormley acted in bad faith.

### ii. Judge Gormley engaged in a pattern of misconduct.

Judge Gormley argues that precedent requires her to have engaged in a pattern of misconduct before she may be subjected to sanctions.[23] Although *Hinton* does seem to suggest such a requirement, we refuse to continue to adhere to an inflexible rule that a judge must have engaged in a pattern of misconduct before being subjected to sanctions. Instead, although a judge may properly be sanctioned for engaging in a pattern of misconduct, we now affirmatively hold that even one egregious or bad faith incident of judicial misconduct may properly subject a judge to discipline.[24] To the extent that it holds to the contrary, *Hinton* is overruled. But, regardless, we believe Judge Gormley's commission of three serious acts of misconduct within approximately fifteen months is sufficient to support a conclusion that she engaged in a pattern of misconduct.

### iii. The "egregious error" method of committing sanctionable judicial misconduct.

We agree with Judge Gormley that SCR 4.020(2) prevents a judge from being sanctioned for committing a good faith legal error. Something more than committing a good faith legal error is obviously required before a judicial officer may be properly disciplined.[25] But Courts have

23. *See Hinton v. Judicial Retirement and Removal Commission*, 854 S.W.2d 756, 759 (Ky. 1993) ("The Commission did not find the trial judge had engaged in a pattern of impatient, undignified or discourteous conduct so as to merit public censure. . . . The audio tapes in this case reveal that the exchange between Anderson and Judge Hinton never went beyond normal conversational tone. In view of the fact that this is the first report of alleged misconduct, we believe that public reprimand is an inappropriate sanction.").

24. The preamble to SCR 4.300 (the Kentucky Code of Judicial Conduct), relied upon by Judge Gormley to demonstrate the necessity of proving that a judge engaged in a pattern of misconduct before sanctions may be imposed, merely provides that whether sanctions are appropriate, and the degree of any sanctions to be imposed, should be determined "on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system." We construe that preamble as meaning only that the existence of a pattern of improper conduct is one of the factors that may be considered in determining if sanctions are appropriate (and is also a factor that can be used to determine the severity of any sanctions). We disagree with Judge Gormley's argument that the preamble requires the presence of a pattern of misconduct before a judicial officer may be subjected to sanctions.

25. *Matter of Benoit*, 487 A.2d 1158, 1162–63 (Me.1985) ("Every trial judge will from time to time commit legal errors in decisions later reversed on appeal, but judicial discipline would be in order in almost none of those cases. Something more than a mere error of

sometimes struggled to define precisely what that "something more" must be and have used various formulas to attempt to explain what differentiates a good faith legal error from sanctionable misconduct.[26] Perhaps what constitutes misconduct would be apparent to the members of this Court and the Commission. But we agree with the Maine Supreme Judicial Court's observation that "[w]hile it may always be possible for this or any court to determine on an 'I know it when I see it' basis whether judicial conduct violates [the Kentucky Code of Judicial Conduct], that approach is plainly unsatisfactory."[27]

Judge Gormley contends that the Commission erred by finding her guilty of misconduct without having found that she engaged in a pattern of misconduct or acted in bad faith. She also takes issue with our purported failure in our original opinion in this matter to set forth clearly when a judicial officer may be subjected to sanctions. So, for the benefit of the bench, bar, and citizens of the Commonwealth, we shall expressly set forth when a judicial officer may be properly sanctioned for legal error.

█ As previously discussed, a judicial officer may be properly sanctioned for acting in bad faith or having engaged in a pattern of misconduct.[28] Because the bad faith and pattern of misconduct methods of committing sanctionable misconduct do not sufficiently address all improper conduct that crosses the line into being sanctionable judicial misconduct, we now join the Commission in expressly adopting the rationale of our sister court in Louisiana that

a judge may be disciplined for "a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation...."[29]

Accordingly, a judicial officer may be sanctioned if the judge committed at least one serious, obvious, egregious legal error that is clearly contrary to settled law. Judge Gormley argued on rehearing of our original opinion that we had essentially de facto adopted a new "egregious error" standard without openly so stating and without affording her an adequate opportunity to defend herself under that "new" standard. But our express adoption on rehearing of the Louisiana court's egregious error standard causes Judge Gormley to suffer no prejudice because we affirm the Commission's conclusions that Judge Gormley acted in bad faith and engaged in a pattern of misconduct, both of which were already established methods of committing sanctionable judicial misconduct. Although we believe Judge Gormley's actions fall precisely within it, our adoption today of the "egregious error" standard utilized in Louisiana courts does not really affect the outcome of Judge Gormley's cases. We address whether Judge Gormley's actions fall within the egregious error standard only as an illustrative guide for future cases.

### iv. Application of egregious error standard.

█ A Family Court judge must not only graduate from law school, but pass the bar examination, and have practiced

---

26. *See* Cynthia Gray, THE LINE BETWEEN LEGAL ERROR AND JUDICIAL MISCONDUCT: BALANCING JUDICIAL INDEPENDENCE AND ACCOUNTABILITY, 32 Hofstra L.Rev. 1245, 1270–75 (2004).

27. *Matter of Benoit*, 487 A.2d at 1163.

28. *See Hinton*, 854 S.W.2d at 759.

29. *In re Quirk*, 705 So.2d 172, 180–81 (La. 1997).

law is required to constitute misconduct....").

law for at least eight years before becoming a Family Court judge.[30] All Kentucky judges are provided with computers and a subscription for online legal research. Most, if not all, Family Court judges are given support staff, one of whom is a licensed attorney.[31] Judge Gormley knew, or should have known, that she was acting erroneously in this case but proceeded to plow forward seemingly without regard for fundamental rights and with a seeming disregard for the law. In other words, even if we had determined that Judge Gormley's actions in Count I did not constitute bad faith, we would conclude that Judge Gormley violated the Code of Judicial Conduct by making egregious "legal ruling[s] ... contrary to clear and determined law about which there is no confusion or question as to its interpretation...." [32] Also, Judge Gormley's actions in Count I are a component of her having engaged in a pattern of misconduct. In short, as a reviewing court, we cannot say the Judicial Conduct Commission was clearly erroneous in its finding of fact, misconstrued the law, or was unfair in its judgment against Judge Gormley as to Count I.

## C. We Affirm as to Count II.

▮ Count II stems from a case similar to Count I. In Count II, the husband filed for a writ of prohibition from the Court of Appeals to prevent enforcement of Judge Gormley's order changing custody. The legal question before the Court of Appeals was whether the Woodford Family Court was the proper venue/forum for a change of custody when the parties no longer had any connection with Woodford County (the dissolution forum). Both par-

ents/parties had moved out of Woodford County ten years before, and neither had had contact with Woodford County until the wife filed the motion for a change of custody. Both children had lived in Rowan County since shortly after the 1998 divorce. The Court of Appeals decided that the proper forum would be Rowan County, and this Court affirmed.[33]

Again, an erroneous ruling by Judge Gormley; but was it a good faith erroneous ruling on the law, or something more (*i.e.,* bad faith, part of a pattern of misconduct, or a sanctionable egregious error)? The Commission reviewed the record and concluded that

> Judge Gormley failed to provide the father even the most basic elements of procedural due process. She acted without assuring him notice and an opportunity to be heard, she thwarted his every attempt to present evidence in support of his position (revealed in a video transcript of the August 14 proceeding), and most importantly acted as judge of a Family Court that had no jurisdiction over the matter that had been presented to her through an unusual and extraordinary procedure (an unverified form or motion containing no statement of facts and no grounds for relief). And, most egregiously, Judge Gormley took actions on August 14, 2008[,] that were intended (although unsuccessfully) to have the effect of denying to the father a right to appeal decisions of the Woodford Family Court to a higher judicial authority.

▮ We agree with the Commission's implicit finding that Judge Gormley acted in bad faith. When the father's counsel

---

**30.** *See* Ky. Const. § 122.

**31.** Judge Gormley acknowledged her staff included a licensed attorney.

**32.** *In re Quirk,* 705 So.2d at 180–81.

**33.** *Dameron,* 2009 WL 3526500.

would not be bullied into going along with Judge Gormley's attempts to circumvent procedures and the law, she excluded the attorney and dealt directly with the father, threatening him with the loss of custody of his other child unless he accepted Judge Gormley's "agreed" order. Judge Gormley knew, or should have known, that she was acting erroneously but pushed on. Even if we did not find that Judge Gormley's actions rose to the level of bad faith, Judge Gormley's actions in Count II also constitute the type of outrageous and egregious error that may properly subject a judicial officer to sanctions. Finally, Judge Gormley's actions in Count II also are one component of a pattern of judicial misconduct. We cannot say the Commission's findings in Count II were clearly erroneous or that the Commission misunderstood the law or the significance of the violations as compared to the sanction.

### D. We Affirm as to Count V.

 Count V dealt with the "standing order" which denied a class of persons (Toyota employees, and any person looking at the employee's salary to increase or lower support payments) access to the judicial system. The "standing order" was nothing more than an administrative order which attempted to deal with the rumored influx of "motions for modification of child support orders." While it is true that administrative matters may be dealt with by local rules, local rules must be approved by the Chief Justice;[34] and rules, especially local rules, cannot deny individuals access to the courts or decline jurisdiction in matters where there is clear statutory authority for filing said motions. There is no doubt that it was error for Judge Gormley to promulgate the standing order.

 That being said, did the judicial error cross over to judicial misconduct? The Order was entered May 8, 2009. Less than a week later, Toyota announced the semi-annual bonuses would be paid. The Order was not rescinded. When a representative of the Judicial Conduct Commission contacted Judge Gormley in May about its concerns over the Order, the Order was not rescinded. Not until six weeks later was the Order rescinded. Judge Gormley offered no explanation for her delay in rescinding the Order. The Judicial Conduct Commission thought the evidence was clear and convincing of Judge Gormley's lack of good faith in handling the matter in Count V. We cannot say its decision was clearly erroneous.

 Had the questionable Order been rescinded immediately after the announcement of the bonuses (or shortly thereafter), or within a reasonable time after the Commission expressed its concerns to Judge Gormley, we would be more sympathetic to the "good faith" argument. But when a judge waits, without explanation, another six weeks to rescind a highly questionable order, an order that was based on a rumored (and now moot) fear, we can only conclude that the Commission did not err by concluding that Judge Gormley's actions in Count V crossed over to judicial misconduct (*i.e.*, we again accept the Commission's implicit finding that Judge Gormley acted in bad faith). We also note that even if Judge Gormley's actions in Count V were not made in bad faith, those actions were of a sufficiently outrageous and egregious nature as to satisfy the egregious error standard for judicial misconduct. Moreover, her actions in Count V also are a component of her having engaged in a pattern of misconduct. Although a public reprimand seems light, we

---

34. SCR 1.040(3)(a).

will defer to the Judicial Conduct Commission.

## CONCLUSION

For the foregoing reasons, we cannot say the Judicial Conduct Commission was clearly erroneous or unreasonable in holding Judge Gormley guilty of judicial misconduct in Count I, Count II, and Count V. Therefore, we AFFIRM the Judicial Conduct Commission's order of suspension and public reprimand. The forty-five day suspension without pay shall commence at a date to be set by the Chief Justice by order after this opinion becomes final.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER, SCOTT, and VENTERS, JJ., sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, and VENTERS, JJ., concur. SCHRODER, J., concurs in result only by separate opinion in which SCOTT, J., joins. NOBLE, J., not sitting.

SCHRODER, J., Concurring In Result only:

As the author of the original Opinion of the Court in the case, rendered August 26, 2010, which upheld the Judicial Conduct Commission's imposition of a 45–day suspension and public reprimand for Judge Gormley's violations of the Kentucky Code of Judicial Conduct, I concur in result with the majority opinion as modified, because it upholds the sanctions as well. I disagree, however, with the majority's decision to modify the previously rendered Opinion. CR 76.32(1)(b) requires that a petition for rehearing be granted only when it appears the court has overlooked a material fact in the record, or a controlling statute or decision, or has misconceived the issues presented on the appeal or the law applicable thereto. The majority agrees that there should be no rehearing.

CR 76.32(1)(c) allows a modification or extension, but it is only to be used to simply point out and have inaccuracies corrected, or to have the opinion extended to address matters that were in issue but not discussed. Neither party requested modification or extension, and no basis for modification exists. Nevertheless, the Court, on its own motion, proceeds to modify the opinion to *rewrite* the opinion. The new opinion muddles the distinction between misconduct in general (sanctionable conduct per SCR 4.020(1)(b)) and sanctionable "legal errors" per SCR 4.020(2); misinterprets the *Hinton* holding; and eliminates language from the original Opinion, which the majority decided was too harsh for a fellow judge.

Judge Gormley argues in her petition for rehearing that *Hinton v. Judicial Retirement and Removal Commission*, 854 S.W.2d 756 (Ky.1993), requires a pattern of misconduct before she may be subject to sanctions. The majority misreads *Hinton* to say it "suggests" such a requirement and then announces that

> we refuse to continue to adhere to an inflexible rule that a judge must have engaged in a pattern of misconduct before being subjected to sanctions. Instead, although a judge may properly be sanctioned for engaging in a pattern of misconduct, we now affirmatively hold that even one egregious or bad faith incident of judicial misconduct may properly subject a judge to discipline.

This paragraph contains a number of errors. First, this Court has never had a rule that a judge must have engaged in a pattern of misconduct before being subjected to sanctions. *See* SCR 4.020(1)(b). The majority's holding that it now takes one *egregious* or *bad faith* incident to be subject to discipline is actually a limitation on SCR 4.020(1)(b), which has no such requirement.

Judge Gormley, and the majority, are misreading *Hinton.* The *Hinton* Court discussed two issues: whether or not Judge Hinton was guilty of violating the Code of Judicial Conduct; and, if guilty, whether a public reprimand (the sanction imposed by the Judicial Conduct Commission) was appropriate where there was not a pattern of misconduct. After reversing the Judicial Conduct Commission and opining that Judge Hinton was "not guilty" of misconduct,[35] the Court added, in dicta, that had Judge Hinton been found guilty, a *public reprimand* would be too harsh a sanction for the isolated incident at issue, without a pattern of misconduct. The majority for gets that there are sanctions below a public reprimand (a private reprimand or an admonition), and the *Hinton* Court did *not* say there can be no sanctions unless there is a pattern of misconduct. The dicta regarding the pattern of conduct was in the context of addressing the *severity* of the sanction.

To understand the errors in the majority opinion, one must refer back to SCR 4.020, which is divided into two sections. SCR 4.020(1)(b) defines a sanction to be an "admonition, private reprimand, public reprimand or censure" all the way up to "suspension without pay or removal or retirement from judicial office." SCR 4.020(1)(b) gives the Judicial Conduct Commission authority to sanction judges and justices for the following conduct:

(i) Misconduct in office.

(ii) Persistent failure to perform his duties.

(iii) Incompetence.

(iv) Habitual intemperance.

(v) Violation of The Code of Judicial Conduct, Rule 4.300.

(vi) Any willful refusal or persistent failure to conform to official policies and directives. . . .

(vii) Conviction of a crime punishable as a felony.

Subsections (i) and (v), the first part of subsection (vi), and subsection (vii), all require but a *single incident* or infraction to merit a sanction. The presence of a pattern of misconduct may be considered in determining the appropriate *sanction,* but has never been a *requirement* for finding guilt and grounds for sanctions. Nor is bad faith a *requirement* In this regard, the majority's reading of *Hinton* is in error. Subsections (ii), (iii), (iv), and the second part of subsection (vi), require persistent or habitual conduct to merit a sanction.

SCR 4.020(2) covers erroneous rulings made by a judge and exempts from sanctions those erroneous decisions or rulings made in good faith. SCR 4.020(2) does not distinguish between single or multiple instances of erroneous legal rulings (hereinafter referred to as legal errors). A single *legal error* made not in good faith may subject a judge to sanctions. A pattern of *legal errors* (good faith notwithstanding) may also subject a judge to sanctions.[36] By substituting the general term "pattern of misconduct" for "pattern of legal errors" throughout the opinion, the majority creates a murky rule. The original Opinion concluded that Judge Gormley's legal errors were not made in good faith.

Finally, I disagree with the majority's omission of language in the original Opinion which it believed was too harsh on

---

**35.** The *Hinton* Court deemed the judge's action in jailing an attorney for contempt in that case appropriate and held that the judge did not violate any standards of judicial conduct.

**36.** SCR 4.020(1)(b)(iii) sanctions incompetence. *Nicholson v. Judicial Retirement and Removal Commission,* 573 S.W.2d 642, 644 (Ky.1978), recognizes a pattern of legal errors as incompetence.

Judge Gormley. Modifications are not for writing style and the language was appropriate for the conduct involved.

SCOTT, J., joins.