RENDERED:  JULY 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1047-MR

JOHN ANDERLE                                                        APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                           HONORABLE JOAN L. BYER, JUDGE
                           ACTION NO. 10-CI-500157


MICHELLE ANDERLE; MELANIE
STRAW-BOONE; AND MICHELE
MCKINNEY                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, JONES, AND McNEILL, JUDGES.

COMBS, JUDGE:  John Anderle appeals from an order of the Jefferson Family

Court entered on July 30, 2020.  In its order, the family court:  modified Anderle's

child support obligation; ordered him to pay to his former spouse, Michelle

Anderle, $4,690.20 as compensation for the loss caused by his failure to abide by

an earlier order; and granted Michelle's motion for attorneys' fees. After carefully considering the arguments on appeal, we affirm.

The Anderles divorced on June 30, 2010. In December 2016, John was laid off from work and began drawing unemployment benefits. Pursuant to the family court's order of April 6, 2017, John's child support obligation for the only minor child remaining at home was reduced from $1,297 per month to $309.15 per month. In light of the dramatic reduction in John's child support obligation, the family court ordered John to notify Michelle and the court within three (3) days of his re-employment.

On May 22, 2018, John notified his counsel by email that he would begin a new job on July 1. He indicated that his salary for 2018 would total $40,000.00 and asked counsel to calculate "what my child support will be through the end of the [] year."

John's counsel sent an email to Michelle's counsel on July 2, 2018, indicating that John had begun a new job the day before. John's counsel wrote: "I believe he will be making $45k per year." Counsel explained that she would provide proof of John's income when she received it and expressed her preference that the couple submit to an agreed order "which includes exchanging income information by April 15th of each year."

On June 4, 2019, Michelle filed a motion to modify child support. In addition, she asked the court to hold John in contempt for his failure to notify the court of his re-employment under the specific terms of its order of May 1, 2017, asking also to order him to pay her attorneys' fees. A hearing was scheduled for December 12, 2019, at 9:00 a.m., but John and his counsel failed to appear for the hearing. Later, John's counsel explained to the court that she was laboring under the mistaken belief that the hearing was scheduled for 9:30 a.m.

Following its review of the testimony and evidence introduced by Michelle, the family court modified John's child support obligation; found that John had willfully violated its order of May 1, 2017; and ordered John to pay Michelle's attorneys' fees in the amount of $2,770.00.

John filed a motion for a new hearing. The family court conducted another evidentiary hearing on June 18, 2020, at which Michelle testified that John had not timely notified her of his re-employment. She indicated that when John eventually told her he had been re-employed, he assured her that he was working with his counsel to calculate a new child support obligation and that he would pay the increased support as of his date of hire. After months of trying to resolve what she believed would be a straightforward issue, and in the face of John's growing belligerence, Michelle testified that she realized she would have to file a motion with the court for relief.

John testified that he was aware of the court order requiring him to promptly notify the court of his re-employment in anticipation of a re-calculation of his child support obligation. He admitted that he had failed to do so. John did not testify or provide evidence to indicate when he advised Michelle of his re-employment. However, he denied that he had agreed with Michelle that his child support obligation as re-calculated would apply as of the date of his re-employment. He testified with respect to the email that he sent his counsel in May 2018 informing her that he had been re-employed and indicated that the email had been forwarded to Michelle's counsel. Michelle's counsel informed the court that the firm had **not** received a forwarded email from John in May 2019. Michelle filed a post-hearing memorandum and her counsel's affidavit indicating that attorneys' fees from December 13, 2019, through the hearing conducted on June 18, 2020, totalled $4,715.00.

Following its review of the testimony and evidence introduced by each party, the family court confirmed its modification of John's child support obligation, increasing it to $700 per month; confirmed that John had willfully violated its order of May 1, 2017; and ordered John to pay Michelle's attorneys' fees now totalling $7,485.00. As a sanction for his contempt of court, the family court ordered John to pay $4,690.20 -- the amount of additional support he would

have paid had he complied with the court's order of May 7, 2017. This appeal followed.

On appeal, John argues that the court abused its discretion by ordering him to pay both sanctions for contempt and Michelle's attorneys' fees. However, John does not contest that portion of the court's order modifying his child support obligation.

A trial court has broad authority to enforce its orders, and contempt proceedings are part of that authority. *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993). Moreover, KRS[1] 403.240 provides that a party's noncompliance with a support or custody decree "shall constitute contempt of court" and shall be addressed as such.

We review a trial court's exercise of its contempt powers for abuse of discretion. *Kentucky River Community Care, Inc. v. Stallard*, 294 S.W.3d 29 (Ky. App. 2008). The court abuses its discretion only where its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575 (Ky. 2000). The trial court's underlying findings of fact are reviewed for clear error. *Commonwealth, Cabinet for Health and Family Servs. v. Ivy*, 353 S.W.3d 324 (Ky. 2011).

Contempt sanctions are classified as either criminal or civil depending upon whether they are meant to punish the contemnor's noncompliance with the

---

[1] Kentucky Revised Statutes.

court's order and to vindicate the court's authority and dignity (criminal) or whether they are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned (civil). *Gormley v. Judicial Conduct Commission*, 332 S.W.3d 717 (Ky. 2010). Since this proceeding was meant to compensate for the loss of child support resulting from John's failure to comply with the court's order, it was civil in nature.

In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order. *Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517 (1932). If the party is seeking compensation, she must prove the amount. *Ivy*, *supra*.

Once the moving party makes out a *prima facie* case, a presumption of contempt arises. The burden of production then shifts to the alleged contemnor to show -- clearly and convincingly -- that he or she was unable to comply with the court's order or was justified in not complying. *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968). The alleged contemnor must offer evidence tending to show clearly that he made all reasonable efforts to comply with the court's order. *Dalton v. Dalton*, 367 S.W.2d 840 (Ky. 1963). If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves, and the trial court must

make its determination from the totality of the evidence -- with the ultimate burden of persuasion resting on the movant. *Ivy*, *supra*.

John argues in his brief that the order requiring him to provide prompt notice to the court when he became re-employed was pointless. However, he never challenged its validity. On the other hand, Michelle presented a *prima facie* case of his contempt for non-compliance. Although John claimed that he had promptly notified Michelle, he admitted that he had never attempted to notify the court -- despite its specific directive for him to do so and despite his being fully aware of the requirement. John failed to show that he was unable to comply with the court's order. Therefore, the family court did not abuse its discretion by deeming John's failure to comply with its order contemptuous.

Having found him in contempt, the court next fashioned a remedy as it was entitled to do. It concluded that because John "has so deliberately disobeyed Court orders for his own personal benefit, at the detriment of his children that this money is to provide for, the sanctions requested by [Michelle] are equitable." The court granted a common law judgment against John in the amount of $4,690.20 representing the difference between the amount of his reduced child support obligation and his re-calculated obligation for the period between June 2018 and June 2019. The contempt proceeding was civil in nature, and it properly compensated Michelle for the actual losses flowing from John's contempt. Based

upon the evidence, the court did not abuse its discretion either by finding John in contempt or by fashioning its compensatory remedy.

We next consider John's contention that the family court erred by awarding Michelle her attorneys' fees. He argues that the fees were improperly awarded as an additional sanction. In the alternative, he contends that the amount of the fees awarded was unreasonable.

Michelle's attorneys' fees were not awarded as a sanction for John's contempt. As John acknowledges, the court relied upon the provisions of KRS 403.220 for the award of fees to Michelle. KRS 403.220 provides that the court may order a party to pay to the opposing party a reasonable amount for the costs of maintaining or defending any proceeding under the chapter related to divorce and child custody and support. After considering the financial resources of both parties, the court may also award attorneys' fees for the legal services rendered in connection with those proceedings. The purpose of the fee-shifting statute is to ensure the fairness of family law proceedings by eliminating inequities that often arise from the termination of a personal relationship. *Seeger v. Lanham*, 542 S.W.3d 286 (Ky. 2018).

As the Supreme Court of Kentucky noted in *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990), "[t]he amount of an award of attorney's fees is committed to the sound discretion of the trial court[.]" In order to discourage

conduct and tactics that waste the court's and attorneys' time, a family court is granted wide latitude to make an award of attorneys' fees. *Rumpel v. Rumpel*, 438 S.W.3d 354 (Ky. 2014). In the case before us, the family court concluded that "absent [John's] contemptuous behavior, [Michelle] would not have incurred [the attorneys' fees.]" This finding is amply supported by the evidence.

John also argues that the *amount* of fees awarded was unreasonable. However, Michelle notes that John did not raise that argument before the family court; nor did he address it in a post-hearing memorandum; nor did he ask for specific findings in a motion to alter, amend, or vacate. Even if it were properly preserved for our review (which it is not), Michelle contends that the award of fees is not unreasonable because John's tactics and refusal to cooperate in the proceedings contributed to the amount of fees she incurred.

The family court found specifically from the evidence that Michelle's attorneys charged "a fair rate for their level of skill and spent a reasonable number of hours on the work performed." Having reviewed the entirety of the two hearings (including counsels' extraordinary level of preparedness) and counsels' detailed billing statements, we are wholly unpersuaded by John's contention that the time counsel spent in preparation for two evidentiary hearings separated by more than six months was patently unreasonable; that their hourly rates were

exorbitant; or that "the amount in controversy" did not justify the quality of representation provided.

We AFFIRM the order of the Jefferson Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Melinda Wandzilak
Louisville, Kentucky

BRIEF FOR APPELLEES:

Melanie Straw-Boone
Michele L. McKinney
Louisville, Kentucky